■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BENJAMIN KILGORE, Appellant. [681 NYS2d 94] —Spain, J. Appeal from a judgment of the County Court of Tompkins County (Barrett, J.), rendered March 14, 1997, upon a verdict convicting defendant of the crimes of robbery in the first degree, robbery in the second degree, petit larceny and criminal mischief in the fourth degree.

In August 1996, defendant was charged in a 12-count indictment with robbery in the first degree, three counts of robbery in the second degree, attempted grand larceny in the second degree, conspiracy in the fourth degree, two counts of unlawful imprisonment in the first degree, two counts of assault in the third degree, petit larceny, and criminal mischief in the fourth degree. The indictment stems from events on the evening of May 1, 1996 when defendant allegedly participated with several others, including codefendants Brady O'Hanlon, Martin Fennimore and Robert Johnston, in the planned and brutal beating of two individuals with baseball bats and a shotgun. During the course of the incident, one of the victim's wallet, cash and ATM card were taken and, later that evening, defendant withdrew approximately $300 from the victim's bank account using the ATM card. Following a suppression hearing, County Court denied defendant's motion to suppress defendant's statements and videotaped confession. Following a jury trial, defendant was found guilty of robbery in the first degree, robbery in the second degree, petit larceny and criminal mischief in the fourth degree. Defendant was sentenced to an indeterminate term of imprisonment of 3 to 6 years for the first degree robbery conviction, $2\frac{1}{4}$ to $4\frac{1}{2}$ years for the robbery in the second degree conviction, and six months each for the remaining misdemeanor convictions; defendant was further ordered to make restitution payments. Defendant appeals.

We affirm. Initially, we reject defendant's contention that County Court erred by refusing to view the videotape of codefendant O'Hanlon's interrogation at the suppression hearing. " 'Evidence is relevant if it has any tendency in reason to prove the existence of any material fact' " (*People v Gagliardi*, 232 AD2d 879, 880, quoting *People v Scarola*, 71 NY2d 769, 777; *see, People v Lewis*, 69 NY2d 321, 325; *People v Johnson*, 47 NY2d 785, 787, *cert denied* 444 US 857). Moreover, "[d]eterminations of relevance and remoteness of evidence rest within the trial court's discretion" (*People v Ahearn*, 88 AD2d 691, 692).

Here, defendant testified at the suppression hearing that prior to and during his interrogation he asked for an attorney, and that he was persuaded by the State Police investigator who was questioning him that an attorney was not necessary and would just impede the investigation. Further, defendant testified that he never asked the investigator his opinion as to whether he should retain an attorney. In direct contravention to defendant's description of these events, the interrogating officer testified that he initially read defendant his *Miranda*

rights in a patrol car outside of O'Hanlon's residence, that defendant asked the officer's opinion as to whether he should retain an attorney, that he informed defendant that he was not in a position to advise him on such matters, that he later reread defendant his *Miranda* rights at the State Police barracks and that defendant asked the officer a second time whether he should retain an attorney. The officer further testified that he again told defendant that such a decision was up to him and at no time prior to or during the interrogation did defendant specifically ask for an attorney. Defendant ultimately waived his right to counsel and gave a videotaped statement.

At the close of the suppression hearing, defendant's attorney asked County Court to view the videotape of O'Hanlon's interrogation and made an offer of proof, contending that a videotape of O'Hanlon's interrogation, which was conducted by another officer, was relevant to prove defendant's assertion that he was denied access to an attorney as a result of improper persuasion. Specifically, defendant contends that the O'Hanlon videotape revealed that O'Hanlon asked for an attorney and was improperly persuaded to waive his right to an attorney (*see, People v O'Hanlon*, 254 AD2d 670), and that the same interrogation techniques used to improperly persuade O'Hanlon to waive his right to an attorney were used by the officer who interrogated defendant. The People objected, contending that there was no evidence to suggest that the officers worked as a team or that they violated defendant's constitutional right to an attorney via a common plan or scheme. County Court sustained the People's objection and refused to consider the evidence. In our view, County Court's ruling that the O'Hanlon videotape was not relevant was not an abuse of discretion. The record reveals that defendant's interrogation was performed at approximately the same time as O'Hanlon's in a separate room outside the presence of O'Hanlon and was conducted by a different investigator. Without proof to establish a direct connection between the O'Hanlon interrogation and that of defendant, the events leading to O'Hanlon's admissions are not relevant.

Next, we reject defendant's contentions that County Court's charge was inadequate due to its failure to specify any level of mental culpability required for a conviction and that the court's error was compounded when it provided an instruction concerning accomplice liability. In reviewing the adequacy of a jury instruction, " '[t]he test is always whether the jury, hearing the whole charge, would gather from its language the correct rules which should be applied in arriving at decision' " (*People v*

*Ladd*, 89 NY2d 893, 895, quoting *People v Russell*, 266 NY 147, 153). Further, "an appellate court should read [the charge] as a whole against the background of the evidence produced at the trial" (*People v Andujas*, 79 NY2d 113, 118; *see*, *People v Fitzgerald*, 26 AD2d 712, 713).

The record reveals that County Court instructed the jury regarding robbery in the first degree as follows: the People must prove "one, that on or about May 1, 1996 in the County of Tompkins the defendant forcibly stole property from [the victim]; and two, that in the course of the commission of the crime the defendant or another participant in the crime used or threatened the immediate use of a dangerous instrument." The court then proceeded to define forcible stealing including as: "a person forcibly steals property when in the course of committing a larceny he uses or threatens the immediate use of physical force upon another person for the purpose of preventing or overcoming resistance to the taking of the property, or to the retention thereof immediately after the taking, or compelling the owner of such property to deliver up the property, or to engag[e] in other conduct which aids in the commission of the larceny." County Court's charge covering robbery in the second degree mirrored the charge for robbery in the first degree with regard to the intent element. Further, the court charged the jury on the concept of accomplice liability, providing instructions that, in order to find defendant guilty "for the criminal acts of another person", it must determine "one, that Defendant acted with the same mental culpability required for the commission of the crime; and two, that he solicited, requested, commanded, importuned, or intentionally aided such person to engage in such conduct". Significantly, the court instructed that it was not sufficient "if the [People] establish[ ] merely that Defendant was present at the time the other person committed the crime charged". The record also reveals that during deliberations, the jury requested that the court clarify the meaning of "mental culpability" in the context of accessorial conduct. Based on our review of the record, we conclude that County Court's instructions regarding the mental culpability/intent element for the robbery charges and accomplice liability were proper.

Finally, we reject defendant's contention that his right to a fair trial was violated by County Court's refusal to grant him a missing witness charge. "As the party seeking the [missing witness] charge, [the] defendant ha[s] the initial burden of proving that [the witness] 'was under the control of the People and that his [or her] testimony would be relevant, noncumula-

tive and beneficial to them'" (*People v Townsley [T-Rock]*, 240 AD2d 955, 958, *lvs denied* 90 NY2d 943, 1014, 1015, quoting *People v Swinton*, 200 AD2d 892, 894, *lv denied* 83 NY2d 1007; *see, People v Smith*, 240 AD2d 949, *lv denied* 91 NY2d 880; *People v Miller*, 235 AD2d 568, 570). In our view, although defendant established that codefendant Fennimore was under the control of the People, he failed to establish that Fennimore would provide noncumulative testimony favorable to him (*see, People v Gonzalez*, 68 NY2d 424; *People v Smith, supra*), especially in light of the testimony of codefendant Johnston.

Mikoll, J. P., Crew III, White and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed, and matter remitted to the County Court of Tompkins County for further proceedings pursuant to CPL 460.50 (5).