DECISION ON RECONSIDERATION.
{¶ 1} Following a jury trial, defendant-appellant Rodriquez Madaris was found guilty of aggravated robbery[1] and robbery[2] along with accompanying gun specifications. Madaris appeals his convictions, arguing that they were against the weight and sufficiency of the evidence, that his fair-trial rights were infringed, that his trial counsel was ineffective, and that the separate convictions for aggravated robbery and robbery violated the Double Jeopardy Clause.
 {¶ 2} We initially decided this case in State v. Madaris,[3] where we affirmed Madaris's findings of guilt and the resulting sentences for aggravated robbery and robbery. After our decision had been rendered, the Ohio Supreme Court decided State v. Cabrales,[4] which clarified the law on allied offenses under State v. Ranee[5] and criticized our interpretation of Ranee in State v. Palmer,[6] where we had held that under Ranee the offenses of aggravated robbery and robbery were allied offenses of similar import.[7] Madaris urges this court to reconsider the multiple sentences for aggravated robbery and robbery in light ofCabrales. We have granted Madaris's motion and reconsidered our decision. We substitute this decision for the previous one.
 {¶ 3} We overrule State v. Palmer and hold that aggravated robbery and robbery are allied offenses of similar import because the commission of aggravated robbery under R.C. 2911.01(A)(1) necessarily results in the commission of robbery under R.C. 2911.02(A)(2); accordingly, we affirm the findings of guilt, but we vacate *Page 3 
the multiple sentences and remand the case for the imposition of only one sentence for aggravated robbery or robbery.
 I. A Coordinated Robbery {¶ 4} In May of 2006, Madaris entered a convenience store, placed what appeared to be a gun on the counter, and demanded cigarettes and the cash in the registers. That night, two clerks were working — Andrew Chamberlain and Madaris's cousin Matthew Early.
 {¶ 5} Chamberlain testified that Madaris had brought a 12-pack of beer to the counter, but that he had refused to sell the beer to Madaris because it was after 1:00 a.m. After pleading with Chamberlain for a few minutes, Madaris settled for a few packs of cigarettes. As Chamberlain turned to get the cigarettes, he heard a loud thud on the counter behind him; he turned around and saw that Madaris had placed a gun on the counter next to the beer. Madaris then demanded the cash from the registers and the cigarettes, and Chamberlain and Early complied. Chamberlain later testified that he had pulled out the "bait money," which was supposed to activate a silent alarm, but that Early had not because he had forgotten. Chamberlain then instructed Early to pull the bait money from the other register to ensure that the alarm had been activated.
 {¶ 6} A short time later, police arrived and, after questioning the parties, reviewing the videotapes, and learning that Early was Madaris's cousin, determined that Early was involved in the robbery. Early was arrested, and his cousin Madaris was arrested a few weeks later.
 {¶ 7} At trial, Madaris asserted that the robbery had been planned by him, Early, and Chamberlain, and that consequently he was guilty of theft, but not *Page 4 
robbery. He testified that, before committing the offense, he and Early had smoked marijuana together. The plan had been to feign the robbery, and for all three to meet later to divide the money and the marijuana. Madaris also testified that he had never showed Chamberlain a gun, but had instead showed him the marijuana.
 {¶ 8} The state rebutted Madaris's assertion through the testimony of Chamberlain, who told the jury that, as he had turned to get cigarettes for Madaris, he heard a loud thud, and that when he turned back around, Madaris had placed a gun on the counter next to the beer. The state also introduced a photograph from the surveillance video showing what appeared to be the barrel of a gun protruding from behind the 12-pack of beer that was on the counter. The surveillance camera had been mounted in such a way that the handle of the gun had been obstructed by the beer.
 {¶ 9} After hearing the testimony and reviewing the evidence, the jury rejected Madaris's assertion that all three had staged the theft and found him guilty of aggravated robbery and robbery with accompanying gun specifications.
 II. Weight and Sufficiency of the Evidence {¶ 10} Madaris first challenges the weight and sufficiency of the evidence used to convict him.
 {¶ 11} When reviewing the sufficiency of the evidence to support a criminal conviction, we must examine the evidence admitted at trial in the light most favorable to the state. We must then determine whether that evidence could have convinced any rational trier of fact that the essential elements of the crime had been proved beyond a reasonable doubt.[8] *Page 5 
 {¶ 12} A review of the weight of the evidence puts the appellate court in the role of a "thirteenth juror."[9] We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[10] A new trial should be granted only in exceptional cases where the evidence weighs heavily against the conviction.[11]
 {¶ 13} Madaris was found guilty of aggravated robbery and robbery. The aggravated-robbery statute prohibits a person from attempting or committing a theft offense while having a deadly weapon and either displaying, brandishing, possessing, or indicating that the person possesses the weapon.[12] The robbery statute prohibits a person from attempting or committing a theft offense and either inflicting, attempting to inflict, or threatening to inflict physical harm on another.[13]
 {¶ 14} In this case, Madaris asked Chamberlain to get him cigarettes, and the state presented the eyewitness testimony of Chamberlain. He testified that, as he retrieved the cigarettes, he heard a thud on the counter, and that when he turned around, he saw Madaris's gun on the counter. The still-frame photograph also showed what appeared to be the barrel of a gun protruding from the outline of the beer package that Madaris had placed on the counter. After the gun was placed on the counter, Madaris demanded money and cigarettes.
 {¶ 15} Having reviewed the record, we are convinced that the evidence presented at trial demonstrated that Madaris had displayed a deadly weapon during *Page 6 
the commission of a theft offense, and that during the commission of this theft offense, he had threatened to physically harm Chamberlain with a weapon.
 {¶ 16} We conclude that a rational factfinder, viewing the evidence in a light most favorable to the state, could have found that the state had proved beyond a reasonable doubt that Madaris had committed aggravated robbery and robbery. Therefore, the evidence presented was legally sufficient to sustain the convictions. And the trial court did not err in overruling Madaris's Crim.R. 29(A) motion for an acquittal. Likewise, based on Chamberlain's eyewitness testimony, the still-frame surveillance photograph, and our review of the record, we are not persuaded that the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding Madaris guilty of aggravated robbery and robbery. Therefore, his convictions were not against the manifest weight of the evidence. Madaris's assignment of error challenging the weight and sufficiency of the evidence is overruled.
 III. The Right to a Fair Trial {¶ 17} Madaris's second assignment of error alleges that his fair-trial rights were violated when the trial court improperly allowed testimony about Chamberlain's demeanor on the night of the robbery, as well as testimony regarding Early's guilty plea in connection with his part in the robbery. We discuss these alleged violations in order.
 {¶ 18} At trial, the prosecution called Officer Lilgenia Wharton, who testified that when she had interviewed Chamberlain after the robbery, he was visibly shaken and afraid, but that Early seemed agitated. Wharton also testified that Chamberlain had been cooperative in response to questioning, but that Early had been evasive and coy. Wharton concluded, after questioning Chamberlain and Early and reviewing the *Page 7 
store video, that Chamberlain was not involved in the crime because his answers and reactions to questioning indicated that he was a victim and not a suspect.
 {¶ 19} Detective Paul Meyer also testified that he had spoken with both Chamberlain and Early after the robbery, and that the conversation with Chamberlain was normal. Conversely, Meyer testified that the conversation with Early was extremely disorderly to the point that Early was almost removed from the police station for yelling and screaming at Meyer.
 {¶ 20} Madaris argues that this testimony was highly prejudicial because it improperly prompted the jury to conclude that Chamberlain was not guilty because the police investigation had reached the same conclusion. According to Madaris, the error in allowing the officers to testify that they believed Chamberlain's account invaded the jury's province of judging Chamberlain's credibility. Not so.
 {¶ 21} We initially note that Officer Wharton's and Detective Meyer's testimony was based on personal observations and firsthand experiences. Under Evid.R. 701, lay witnesses may testify about another's demeanor or emotional state if the testimony is based on personal observations and firsthand perceptions.[14]
 {¶ 22} In State v. Leach, this court announced that "lay opinion must be: (1) `rationally based on the perception of the witness,' i.e., the witness must have firsthand knowledge of the subject of his testimony and the opinion must be one that a rational person would form on the basis of the observed facts; and (2) `helpful,' i.e., it must aid the trier of fact in understanding the testimony of the witness or in determining a fact in issue."[15] We are convinced that the testimony elicited by the *Page 8 
state met the lay-opinion requirements in Leach. First, both Wharton and Meyer had interviewed Chamberlain, and their opinion that he was telling the truth was one that a rational person would have formed based on the observed facts. Both officers had personally observed Chamberlain's normal behavior and Early's unusual behavior. It is commonsensical that the victim of a robbery would under most any circumstance be forthcoming, whereas a co-conspirator in the robbery would be evasive and dodgy. Likewise, Wharton's and Meyer's testimony was helpful in aiding the jury to determine a fact in issue — whether the offense was a staged theft, as Madaris had claimed, or a robbery. The officers' testimony was admissible because it was based on their personal observations and perceptions of Early and Chamberlain, and because it assisted the jury in its determination of guilt. And, of course, the probative value of the testimony outweighed any perceived prejudice.
 {¶ 23} Madaris also argues that the trial court erred in allowing Wharton to testify that Early was charged with complicity to aggravated robbery. But Madaris first raised the issue of Early's guilty plea during opening statements, and it was not improper for the state to later solicit testimony from Detective Paul Meyer relating to the plea.
 IV. Effective Assistance of Counsel {¶ 24} Madaris next argues that he was deprived of the effective assistance of trial counsel. Our review of the record reveals that Madaris's counsel's representation clearly rose above what was objectively reasonable, and consequently we summarily reject this assignment of error. *Page 9 
 V. Communication with the Jury {¶ 25} Madaris also contends that the trial court erred in providing the jury with a magnifying glass without first notifying the parties.
 {¶ 26} During deliberations, the jurors requested a magnifying glass to more closely examine a photograph. The photograph was the still-frame image taken from the security camera, which depicted the barrel of what was alleged to be a gun. The photograph was grainy and taken from a distance and angle that made identification of the object on the counter difficult. After receiving the jury's request, the trial court provided the magnifying glass without consulting either party. According to Madaris, the trial court's communication with the jury, and its provision of a magnifying glass, violated his right to a fair trial and due process of law.
 {¶ 27} While we have not ruled on this specific issue in this district, we are guided by our sister districts that have addressed the matter. As early as 1900, Ohio courts recognized that a jury, at the discretion of the trial court, could examine a photograph with a magnifying glass,[16] even without any consultation with defense counsel or the defendant.[17] Other state's supreme courts and federal courts have held that the use of a magnifying glass does not constitute new or extrinsic evidence: "Courts generally treat [the use of a magnifying glass by the jury] as assistance to natural power of eyes of jurors to see, and not as additional evidence in the case."[18]
 {¶ 28} The record reflects that the trial court did not give any jury instructions or further communicate with the jury concerning the magnifying glass — *Page 10 
it simply granted the jury's request for a magnifying glass. We agree with the authorities we have cited and hold that a trial court may in its discretion provide the jury with a magnifying glass without first notifying the parties.[19] In this case, the magnifying glass was not extrinsic or new evidence, it did not involve inappropriate communication with the jury, and the trial court did not abuse its discretion in sending the jury the magnifying glass. Moreover, even if it is assumed that an error occurred, it was harmless in that the evidence of Madaris's guilt was substantial.
 VI. Aggravated Robbery and Robbery, Allied Offenses? {¶ 29} Madaris's final assignment of error raises the issue whether aggravated robbery and robbery are allied offenses of similar import.
 {¶ 30} We begin by examining R.C. 2941.25. Under Ohio's multiple-count statute, if a defendant's conduct constitutes two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one;[20] but if the defendant's conduct constitutes two or more offenses of dissimilar import, or where the conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.[21]
 {¶ 31} State v. Rance interpreted R.C. 2941.25 to mean that in discerning whether offenses are allied and of similar import, the reviewing court must determine if the elements of the crimes correspond to such a degree that the *Page 11 
commission of one crime will result in the commission of the other; if so, the crimes are allied offenses of similar import.[22]
 {¶ 32} In State v. Palmer, we held that, under Rance, aggravated robbery and robbery are not allied offenses of similar import.[23] But recently the Ohio Supreme Court, in State v. Cabrales, cited our decision in Palmer as having exemplified an overly narrow interpretation of Rance. (This author dissented in Palmer.)
 {¶ 33} The Cabrales court explained that Palmer had misinterpretedRance as requiring a "strict textual comparison" of elements under R.C.2941.25(A), and an exact alignment of elements.[24] TheCabrales court held that if, in comparing the elements of the offenses in the abstract and without requiring an exact alignment of elements, the offenses are so similar that the commission of one offense will necessarily result in the commission of the other, then the offenses are allied offenses of similar import.[25] We now compare the elements of aggravated robbery and robbery in the abstract, being ever mindful that the elements of the offenses need not align exactly.
 {¶ 34} R.C. 2911.01(A)(1) prohibits aggravated robbery: "No person, in attempting or committing a theft offense * * * shall * ** have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." R.C. 2911.02(A)(2) prohibits robbery: "No person, in attempting or committing a theft *Page 12 
offense or in fleeing immediately after the attempt or offense, shall inflict, attempt to inflict, or threaten to inflict physical harm on another."
 {¶ 35} In reviewing the elements of R.C. 2911.01(A)(1) and R.C. 2912.02(A)(2) in the abstract, we conclude that aggravated robbery and robbery are allied offenses of similar import. Once again in brief, aggravated robbery prohibits attempting or committing a theft offense while having a deadly weapon and either using, displaying, brandishing, possessing, or indicating that the person possesses the weapon;[26]
whereas robbery prohibits a person from attempting or committing a theft offense and either inflicting, attempting to inflict, or threatening to inflict physical harm on another.[27]
 {¶ 36} The difference between the two offenses is that aggravated robbery requires that the theft offense, or attempted theft, be committed with a deadly weapon (whether by actual use, display, brandishing, possession, or indication of possession), but robbery requires that during the theft offense, or attempted theft, physical harm be inflicted, attempted, or threatened. And analyzing the elements in the abstract, we conclude that the commission of aggravated robbery[28] necessarily results in the commission of robbery.[29] We are unable to posit a scenario where the commission of aggravated robbery would not concomitantly involve either an infliction, attempt, or threat of physical harm. Whether by using, displaying, brandishing, possessing, or indicating possession, the deadly-weapon element of aggravated robbery guarantees the commission of a robbery whether by infliction, attempt, or threat of physical harm as required under R.C.2911.02(A)(2). We hold *Page 13 
that aggravated robbery[30] is an allied offense of similar import to robbery.[31] We likewise conclude that Madaris's conduct in the convenient-store robbery involved but a single animus and a single crime.
 {¶ 37} In light of the Ohio Supreme Court precedent in State v.Cabrales,[32] we specifically overrule State v. Palmer[33] insofar as it held that aggravated robbery and robbery not allied offenses of similar import; we hold that aggravated robbery as prohibited by R.C.2911.01(A)(1) and robbery as prohibited by R.C. 2912.02(A)(2) are allied offense of similar import because the commission of aggravated robbery will necessarily result in the commission of robbery.
 {¶ 38} Accordingly, we affirm the trial court's findings of guilt, but we vacate the multiple sentences and remand the case for sentencing in accordance with the law and this opinion.
Judgment affirmed in part and reversed in part, and cause remanded.
HENDON and CUNNINGHAM, JJ., concur.
[1] R.C. 2911.01(A)(1).
[2] R.C. 2911.02(A)(2).
[3] 1st Dist. No. C-070287, 2008-Ohio-1440.
[4] ___Ohio St.3d ___, 2008-Ohio-1625, ____ N.E.2d ____.
[5] 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699.
[6] 148 Ohio App.3d 246, 2002-Ohio-3536, 772 N.E.2d 726.
[7] Id. at ¶ 13.
[8] See State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[9] See State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[10] Id., citing Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211.
[11] Id.
[12] R.C. 2911.01(A)(1).
[13] R.C. 2911.02(A)(2).
[14] See State v. Sibert (1994), 98 Ohio App.3d 412,648 N.E.2d 861.
[15] 150 Ohio App.3d 567, 2002-Ohio-6654, 782 N.E.2d 631, at ¶ 53, citing Lee v. Baldwin (1987), 35 Ohio App.3d 47, 519 N.E.2d 662.
[16] See Hohly v. Sheely (1900), 11 Ohio CD. 678.
[17] See State v. Dickens (Apr. 12, 1983), 10th Dist. No. 81AP-1003; see, also, State v. Bass (July 20, 1982), 10th Dist. No. 81AP-999.
[18] See Falletti v. Brown (Okla. 1971), 481 P.2d 744, 745; see, also,Boland v. Dolan (1995), 140 N.J. 174, 657 A.2d 1189; Morse v.Blanchard (1898), 117 Mich. 37, 75 N.W. 93; Barker v. Perry (1885), 67 Iowa 146, 25 N.W. 100; Evans v. United States (C.A.D.C.2005),883 F.2d 146, 150-151; United States v. Brewer (C.A.9, 1986), 783 F.2d 841,843.
[19] See Brewer and Evans, supra.
[20] See R.C. 2941.25(A).
[21] See R.C. 2941.25(B).
[22] See Rance, supra.
[23] Palmer, supra, at ¶ 13.
[24] Cabrales at ¶ 17 and 21.
[25] Cabrales, supra, at paragraph one of the syllabus.
[26] R.C. 2911.01(A)(1).
[27] R.C. 2911.02(A)(2).
[28] R.C. 2911.01(A)(1).
[29] R.C. 2911.02(A)(2).
[30] R.C. 2911.01(A)(1).
[31] R.C. 2911.02(A)(2).
[32] ___Ohio St.3d___, 2008-Ohio-1625,___ N.E.2d___.
[33] (2002), 148 Ohio App.3d 246, 772 N.E.2d 726. *Page 1