DECISION ON RECONSIDERATION. *Page 2 
{¶ 1} Defendant-appellant Marlin Thomas appeals from the Hamilton County Common Pleas Court's judgment convicting him, following a jury trial, of four counts of aggravated robbery with accompanying firearm specifications, three counts of felonious assault with accompanying firearm specifications, having a weapon under a disability, and receiving stolen property. Thomas presents on appeal nine assignments of error. Upon our determination that the trial court violated R.C. 2941.25
when it sentenced Thomas for felonious assault as charged in counts seven and eight of the indictment, we vacate the sentences imposed for those offenses.
 I. On Reconsideration {¶ 2} Thomas was convicted in 2001. He appealed, and in 2002, we affirmed his convictions.[1] In the ninth assignment of error presented in his appeal, Thomas challenged the trial court's imposition of sentences for felonious assault under R.C. 2903.11(A)(1), as charged in count eight of the indictment, and felonious assault under R.C. 2903.11(A)(2), as charged in count seven. Although those charges arose from a single assault upon a single victim, we applied the Ohio Supreme Court's decision in State v. Rance[2] to hold that the trial court could, consistent with R.C. 2941.25, sentence Thomas on both counts because the offenses were not allied offenses of similar import.[3]
The Ohio Supreme Court declined to accept Thomas's appeal for review.[4] *Page 3 
 {¶ 3} But in March of 2007, in State v. Cabrales, this court held that a trial court could not, consistent with R.C. 2941.25, sentence a defendant for both possession of a controlled substance under R.C. 2925.11(A) and trafficking in the same controlled substance under R.C. 2925.03(A)(2), because the offenses are allied and of similar import[5] On April of 2008, the Ohio Supreme Court affirmed our judgment in Cabrales.[6] In so doing, the supreme court rejected as "overly narrow" the "view of numerous Ohio appellate districts" (including, specifically, this district) that Rance's allied-offenses analysis "`requires a strict textual comparison' of elements under R.C. 2941.25(A)."[7]
 {¶ 4} In the wake of the supreme court's decision inCabrales, we held in State v. Smith that felonious assault under R.C. 2903.11(A)(1) and felonious assault under R.C. 2903.11(A)(2) are allied offenses of similar import.[8] And we reconsidered our March 2008 decision in State v. Madaris and our 2002 decision in State v.Palmer and held that aggravated robbery under R.C. 2911.01(A)(1) and robbery under R.C. 2911.02(A)(2) are also allied offenses of similar import.[9]
 {¶ 5} In October of 2008, citing Cabrales and the supreme court's decision in State v. Colon, [10] Thomas applied under App. R. 26(A) for reconsideration of our 2002 decision in his case. We granted his motion in part. We held that, to the extent that he sought reconsideration of our decision in light of Colon, Thomas had failed to *Page 4 
demonstrate extraordinary circumstances that would warrant an enlargement of the time prescribed by App. R. 26(A) for applying for reconsideration.[11] But the supreme court's decision inCabrales and our subsequent decision in Smith made apparent our error in rejecting Thomas's challenge, in his ninth assignment of error, to the imposition of prison terms upon the verdicts finding him guilty of felonious assault as charged in counts seven and eight of the indictment.[12] And those decisions provided the extraordinary circumstances that warranted enlarging the application time.[13]
Accordingly, we reconsider, and substitute this decision for, our 2002 decision.
 II. The Facts {¶ 6} Thomas was charged with multiple counts of aggravated robbery and felonious assault and single counts of having a weapon under a disability and receiving stolen property in connection with a December 25, 2000, crime spree that had injured four victims. At 8:00 p.m. on Christmas night, in the West End neighborhood of the city of Cincinnati, two masked men emerged from a van, robbed Antwan Davis, and shot him in the back of the leg as he attempted to escape. Forty-five minutes later, in the city's Northside neighborhood, two masked men alighted from a van, stole Steven Uhlenbergher's wallet and Mary Barnett's purse, pistol-whipped Barnett, and shot her in the arm. As the robbers fled in their van, they sped past a police cruiser. The police officers pursued the van, and the van crashed into a car driven by Anthony Jones. *Page 5 
Jones was injured. Thomas was also injured, and the police found him unconscious in the driver's seat of the overturned van, with a gun beneath him.[14]
 {¶ 7} At trial, a criminologist testified that a shell casing found near Barnett had been fired from the gun found beneath Thomas, and that Thomas had had traces of gunpowder on his right hand. The gunpowder residue, the criminalist opined, suggested either that Thomas had fired a gun, or that he had come into contact with someone who had fired a gun.
 {¶ 8} A police officer testified that he had found in the van in which Thomas had been apprehended two coats, one plaid and one black, along with Uhlenbergher's wallet. Davis testified that one of his robbers had been wearing a plaid coat and the other had been wearing a black coat. And he identified the van as that from which his attackers had emerged.
 {¶ 9} Thomas testified that he had had no knowledge of the assaults and robberies because he had been asleep in the back of the van. He stated that, as he was leaving a West End bar, he had seen his friend "Keno" driving a van. Thomas paid Keno to take him home. He and two other passengers, whom he did not know, smoked marijuana. He then fell asleep in the back of the van and awoke when the van stopped and the two passengers climbed back in. A short time later, the van stopped again and a fourth passenger entered. A police cruiser then began following the van. During the ensuing high-speed chase, Thomas insisted, he had demanded that Keno stop and let him out. *Page 6 
 {¶ 10} The jury chose not to believe Thomas and found him guilty on 12 of the 15 counts upon which he had been indicted. The trial court then sentenced him to a total of 45 and one-half years in prison.
 III. The Assignments of Error A. Batson Claims {¶ 11} We address first Thomas's fifth assignment of error, in which he maintains that the trial court erred in overruling his objections to the state's use of peremptory challenges to exclude two African-American men from the jury.[15] Because the state provided race-neutral explanations for excluding these two men from the jury, we overrule this assignment of error.[16]
 {¶ 12} The state excluded the first prospective juror because he had previously been convicted of theft, a crime of dishonesty. The state excluded the second prospective juror because of his hypertechnicality. The prospective juror had expressed concern that when the court had asked "folks to tell the truth, so help you God," "the court never asked the people if they believe in God." The state explained that since it would be basing its case against Thomas on circumstantial evidence, it feared that this prospective juror would hold the state to a higher standard of proof. These race-neutral explanations were sufficient to defeat Thomas's Batson challenge. Accordingly, the fifth assignment of error is without merit. *Page 7 
 B. Evidentiary Ruling {¶ 13} In his sixth assignment of error, Thomas asserts that the trial court erred in sustaining the prosecution's objection to the following question posed by defense counsel to the victim of the West End robbery and assault, Antwan Davis: "But apparently you didn't tell police about [the plaid jacket], because they don't have it in their dispatch note, that right?" Thomas argues that this question was appropriate because he was trying to show the jury that Davis's recollection at trial about a plaid coat worn by one of his attackers was a product of police suggestion.
 {¶ 14} But the objection was sustained only as to the form of the question. Defense counsel rephrased the question, asking, "What did you tell the police at the time?" Davis then answered the question. Because defense counsel had rephrased the question and Davis had answered, no material prejudice arose from the trial court's ruling.[17] Thus, the trial court did not abuse its discretion in sustaining the objection, and we overrule the sixth assignment of error.
 C. Prosecutorial Misconduct in Closing Argument {¶ 15} In his third assignment of error, Thomas asserts that he was denied a fair trial when the assistant prosecuting attorney commented in closing argument on Thomas's silence after his arrest by remarking on his failure to immediately proclaim his innocence by telling the police that he had fallen asleep in Keno's van. Although Thomas did not request a mistrial following the prosecutor's comments, he did object to the alleged misconduct and has thus preserved this issue for appeal. *Page 8 
 {¶ 16} In Doyle v. Ohio, the Ohio Supreme Court held that it is "fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."[18] During closing argument, the assistant prosecuting attorney referred to the testimony of Police Officer Will Robbins. Officer Robbins had accompanied the Northside victims to the hospital to complete his investigation. While at the hospital, he saw Thomas, who had already been read his Miranda rights. Officer Robbins knew Thomas personally and told him that his father would be angry with him. Officer Robbins testified that Thomas had responded that he was not worried about his father, but was instead concerned about his mother's reaction. In closing argument, the assistant prosecuting attorney offered this comment on Thomas's failure to then proclaim his innocence: "When he's laying in the hospital under arrest for these terrible crimes, shooting of an 83 year old lady on Christmas night, he doesn't say, [`]God, you got it all wrong. I was in the car with Keno and these two guys, I don't know who they are, but they got in the car. Gosh, I shook the one guy's hand.['] He didn't say that. What does he say? [`]My mom's going to kill me.['] [Defense counsel] says, [`O]h, that doesn't mean anything.['] Well, yeah, it does. By itself, maybe not. But with all of this evidence, it sure does."
 {¶ 17} In State v. Saunders, the Sixth Appellate District held that "when a defendant's post-arrest silence is raised for the first time in the prosecutor's closing argument, it is not being raised for impeachment purposes, and the defendant is further prejudiced in that he or she is afforded no opportunity to call *Page 9 
rebuttal witnesses."[19] Here, the comments on Thomas's post-arrest silence came only in closing argument. Accordingly, the comments were improper.
 {¶ 18} But we review Doyle violations for harmless error.[20] In determining whether the prosecutorial misconduct was harmless, this court must consider the extent of the comments, whether an inference of guilt from the silence was stressed to the jury, and the extent of other evidence suggesting Thomas's guilt.[21] Our review of the record demonstrates that the improper comments were only a small portion of a closing argument that, transcribed for our review, spanned over 30 pages. Nor can it be said, from the context of the entire closing argument, that an inference of guilt was stressed to the jury. In fact, in making the comments, the assistant prosecuting attorney stated that Thomas's silence, "[b]y itself," was not indicative of guilt. Finally, the record provides overwhelming evidence of Thomas's guilt. We, therefore, conclude that the comments were harmless. Accordingly, we overrule the third assignment of error.
 D. Weight and Sufficiency of the Evidence {¶ 19} In his first, fourth, and eighth assignments of error, Thomas presents various challenges to the weight and sufficiency of the evidence supporting his convictions. These challenges are untenable.
 1. {¶ 20} With respect to the felonious-assault and aggravated-robbery charges involving Davis, Thomas argues that the evidence presented by the state was circumstantial and did not sufficiently support the inference that Thomas had *Page 10 
committed the crimes with the requisite intent. The elements of an offense may be established by direct evidence, circumstantial evidence, or both.[22] Circumstantial and direct evidence are of equal probative value.[23] When reviewing the value of circumstantial evidence, "the weight accorded an inference is fact-dependent and can be disregarded as speculative only if reasonable minds can come to the conclusion that the inference is not supported by the evidence."[24]
 {¶ 21} With these principles in mind, we are persuaded that the state presented sufficient evidence from which the jury could have concluded, beyond a reasonable doubt, that Thomas had committed the offenses of aggravated robbery and felonious assault against Davis. To convict him of aggravated robbery, the state had to prove that Thomas, in attempting to commit a theft offense, had had a deadly weapon on his person or under his control.[25] To convict him of felonious assault, the state had to prove that he had knowingly caused or attempted to cause physical harm to Davis by means of a deadly weapon.[26]
 {¶ 22} Thomas claims that the circumstantial evidence presented at trial permitted the jury to infer only that he had been present when Davis was robbed, not that he had knowingly inflicted or attempted to inflict physical harm on Davis. But Davis testified that his robbers had emerged from the van in which Thomas had been found, and that one of his robbers had shot him as he was running away. And Thomas *Page 11 
was found in the overturned van with a gun beneath him and gunpowder residue on his hand.
 {¶ 23} From this evidence, the jury could reasonably have inferred that Thomas had participated in the robbery. Consequently, the state adduced sufficient evidence to establish, beyond a reasonable doubt, that Thomas had committed the offenses of aggravated robbery and felonious assault upon Davis.[27]
 2. {¶ 24} To convict Thomas of receiving a stolen firearm, the state had to prove that he had received or retained the property of another, knowing or having reasonable cause to believe that the property had been obtained through the commission of a theft offense.[28] The gun used to shoot Barnett was indisputably stolen. Despite the absence of fingerprints on the gun, testimony that the gun had been found beneath Thomas in the van and that he had had gunpowder residue on his hands provided sufficient proof that he had received or retained the gun.
 {¶ 25} Thomas nonetheless asserts that the evidence was insufficient to show that he knew or had reasonable cause to believe that the handgun had been stolen. A defendant's knowledge that property in his or her possession had been stolen may be inferred from the following factors: "(a) the defendant's unexplained possession of the merchandise, (b) the nature of the merchandise, (c) the frequency with which such merchandise is stolen, (d) the nature of the defendant's commercial activities, and (e) the relatively limited time between the thefts and the recovery of the merchandise. "[29] *Page 12 
 {¶ 26} Although two years had passed between the time the gun had been stolen and the time of the offenses, consideration of the remaining factors supported a finding that Thomas knew or had reasonable cause to believe that the gun had been stolen. Thus, viewing the evidence in a light most favorable to the state, we conclude that the jury could have reasonably found that the elements of receiving stolen property had been proved beyond a reasonable doubt.[30]
 3- {¶ 27} With respect to Thomas's remaining convictions, we hold that the trial court properly submitted the charges and their accompanying specifications to the jury, because upon the evidence adduced at trial, reasonable minds could have reached different conclusions as to whether each material element of the charged offenses and specifications had been proved beyond a reasonable doubt.[31] And we conclude that the jury's verdicts were not contrary to the manifest weight of the evidence, when nothing in the record suggests that the jury, in resolving the conflicts in the evidence, lost its way or created such a manifest miscarriage of justice as to warrant reversal of the convictions.[32] Accordingly, we overrule the first, fourth, and eighth assignments of error.
 E. Sentencing {¶ 28} In his seventh assignment of error, Thomas maintains that the trial court erred in sentencing him to a cumulative prison term of 45 and one-half years. *Page 13 
Specifically, Thomas asserts that the trial court's order that he serve his sentences consecutively constituted cruel and unusual punishment. We disagree.
 {¶ 29} Generally, "a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment. * * * It is generally accepted that punishments which are prohibited by theEighth Amendment [to the United States Constitution] are limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community. * * * Where the offense is slight, more may be prohibited than savage atrocities. However, the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community. "[33]
 {¶ 30} A review of the record demonstrates that consecutive sentences were properly imposed. We are persuaded, in light of the extent and viciousness of Thomas's criminal conduct, that the sentences were not disproportionate to the seriousness of his conduct. Because the record supports the consecutive sentences and the sentences did not constitute cruel and unusual punishment, we overrule the seventh assignment of error.
 F. Allied Offenses of Similar Import {¶ 31} In his second assignment of error, Thomas argues that he could not, consistent with R.C. 2941.25, have been sentenced for both the aggravated robbery of Mary Barnett as charged in count four of the indictment and the aggravated robbery involving Anthony Jones as charged in count 14. Thomas was convicted of aggravated *Page 14 
robbery in violation of R.C. 2911.01(A)(1) for robbing Barnett of her purse while brandishing a weapon and aggravated robbery in violation of R.C. 2911.01(A)(3) for inflicting physical harm upon Jones while fleeing after robbing Barnett. Thomas maintains that because the charges were based on only one theft, they involved allied offenses of similar import, and he could have been sentenced for only one. We disagree.
 {¶ 32} Under R.C. 2941.25, a defendant may, in a single proceeding, be found guilty of and sentenced for two offenses, having as their genesis the same criminal conduct or transaction, if the offenses (1) are not allied offenses of similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense.[34] Two offenses are allied offenses of similar import if, in comparing the elements of the offenses in the abstract, without considering the facts of the case or requiring an exact alignment of elements, the offenses are so similar that the commission of one offense will necessarily result in the commission of the other.[35]
 {¶ 33} Thomas's conviction for the aggravated robbery involving Barnett required proof that, during the commission of a theft or in fleeing from a theft, he had brandished a gun.[36] His conviction for the aggravated robbery involving Jones required proof that, during the commission of a theft or in fleeing from a theft, he had "inflicted or attempted to inflict serious physical harm."[37] Under the analysis set forth in Cabrales, the offenses cannot be said to be so similar that the commission of one *Page 15 
offense will necessarily result in the commission of the other. Thus, the offenses are not allied offenses of similar import, and Thomas could have been sentenced for both. Accordingly, we overrule the second assignment of error.
 {¶ 34} In his ninth assignment of error, Thomas asserts that the trial court violated R.C. 2941.25, when it sentenced him for felonious assault in violation of R.C. 2903.11(A)(2), as charged in count seven of the indictment, and felonious assault in violation of R.C. 2903.11(A)(1), as charged in count eight. We agree.
 {¶ 35} Thomas was charged with felonious assault in counts seven and eight for shooting Mary Barnett. Felonious assault under R.C. 2903.11(A)(1) and felonious assault under R.C. 2903.11(A)(2) are allied offenses of similar import[38] And the offenses in this case were not committed separately or with a separate animus as to each.[39]
Therefore, the trial court erred in sentencing Thomas for each. Accordingly, we sustain the ninth assignment of error.
 III. Conclusion {¶ 36} We vacate the sentences imposed for felonious assault as charged in counts seven and eight of the indictment and remand the case for resentencing for either offense and, as appropriate, for the specification. In all other respects, we affirm the judgment of the court below.
Sentences vacated in part and cause remanded.
HILDEBRANDT, P. J., SUNDERMANN and CUNNINGHAM, JJ.
[1] State v. Thomas, 1st Dist. No. C-010724, 2002-Ohio-7333.
[2] 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699.
[3] See Thomas, supra, at ¶ 30.
[4] State v. Thomas, 98 Ohio St.3d 1515, 2003-Ohio-1572,786 N.E.2d 64.
[5] 1st Dist. No. C-050682, 2007-Ohio-857, ¶ 36.
[6] 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181.
[7] Id. at ¶ 21.
[8] 1st Dist. No. C-070216, 2008-Ohio-2469, ¶ 40, discretionary appeal not allowed, 115 Ohio St.3d 1474, 2007-Ohio-5735, 875 N.E.2d 628.
[9] See State v. Madaris, 1st Dist. No. C-070287, 2008-Ohio-2470, ¶ 3;State v. Palmer, 178 Ohio App.3d 192, 2008-Ohio-4604,897 N.E.2d 224, ¶ 3-7, 15.
[10] 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917.
[11] See App. R. 14(B).
[12] See App. R. 26(A); State v. Black (1991), 78 Ohio App.3d 130, 132,604 N.E.2d 171.
[13] See App. R. 14(B).
[14] For a more detailed account of these events, see this court's decision in the appeal of Thomas's co-defendant, Gerald Watson,State v. Watson, 1st Dist. No. C-010691, 2002-Ohio-4046.
[15] See Batson v. Kentucky, (1986), 476 U.S. 79, 106 S.Ct. 1712.
[16] See State v. Hill, 73 Ohio St.3d 433, 444-445, 1995-Ohio-287,653 N.E.2d 271, citing State v. Hernandez, (1992), 63 Ohio St.3d 577,582-583, 589 N.E.2d 1310.
[17] See State v. Long, (1978), 53 Ohio St.2d 91, 372 N.E.2d 804.
[18] (1976), 426 U.S. 610, 618-619, 96 S.Ct. 2240.
[19] (1994), 98 Ohio App.3d 355, 359-360, 648 N.E.2d 587.
[20] See United States v. Newman, (C.A.9, 1991), 943 F.2d 115,118.
[21] Id.
[22] See State v. Durr (1991), 58 Ohio St.3d 86, 568 N.E.2d 674.
[23] See State v. Jenks (1991), 61 Ohio St.3d 259, 272, 574 N.E.2d 492
(holding that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value [and] in some instances certain facts can only be established by circumstantial evidence").
[24] Wesley v. The McAlpin Co. (May 25, 1994), 1st Dist. No. C-930286, citing Donaldson v. Northern Trading Co. (1992), 82 Ohio App.3d 476,483, 612 N.E.2d 754.
[25] See R.C. 2911.01(A)(1).
[26] See R.C. 2903.11(A)(2).
[27] See Jenks, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; accord State v. Waddy (1992), 63 Ohio St.3d 424, 430,588 N.E.2d 819.
[28] See R.C. 2913.51(A).
[29] State v. Davis (1988), 49 Ohio App.3d 109, 112,550 N.E.2d 966.
[30] See Jenks, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; accord Waddy, 63 Ohio St.3d at 430, 588 N.E.2d 819.
[31] Id.
[32] See State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[33] McDougle v. Maxwell (1964), 1 Ohio St.2d 68, 69-70,203 N.E.2d 334.
[34] See State v. Bickerstaff (1984), 10 Ohio St.3d 62,461 N.E.2d 892.
[35] See Cabrales, 118 Ohio St.3d 54, 886 N.E.2d 181, paragraph one of the syllabus.
[36] See R.C. 2911.01(A)(1).
[37] See R.C. 2911.01(A)(3).
[38] See Smith, supra, at ¶ 40.
[39] See R.C. 2941.25(B). *Page 1