The STATE of Ohio, Appellee,

v.

BLACK, Appellant.

[Cite as *State v. Black* (1991), 78 Ohio App.3d 130.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–900329 to C–900332.

Decided Sept. 25, 1991.

*Arthur M. Ney, Jr.*, Prosecuting Attorney, and *Stephen J. Wenke*, Assistant Prosecuting Attorney, for appellee.

*H. Fred Hoefle*, for appellant.

132

*Per Curiam.*

The appellant, Donald L. Black, and the appellee, the state of Ohio, have applied for reconsideration of our decision entered on August 21, 1991. This day, by separate entry, we have granted those applications, giving our reasons therefor in an accompanying memorandum decision. In our order granting the applications, we have set aside our prior decision ruling upon the several assignments of error asserted by the appellant.

■ As the Court of Appeals for Franklin County, by then Judge Thomas J. Moyer, now Chief Justice of the Supreme Court of Ohio, declared in *Matthews v. Matthews* (1981), 5 Ohio App.3d 140, 143, 5 OBR 320, 323–324, 450 N.E.2d 278, 282, on reconsideration:

"App.R. 26, which provides for the filing of an application for reconsideration in this court, includes no guidelines to be used in the determination of whether a decision is to be reconsidered and changed. The test generally applied is whether the motion for reconsideration calls to the attention of the court an obvious error in its decision or raises an issue for our consideration that was either not considered at all or was not fully considered by us when it should have been."

As we have stated in our separate memorandum decision, our conclusion that the appellant conceded his commission of certain sexual acts constitutes an obvious error on our part and is expunged by this decision.

These causes now come on to be reconsidered upon the appeals, the transcript of the docket, journal entries and original papers as first certified and as amplified by the supplemental transcripts from the Court of Common Pleas of Hamilton County, Juvenile Division, the briefs, the memoranda attached to the applications for reconsideration and the arguments of counsel upon the briefs made February 28, 1991.

The appellant was found guilty of four charges of contributing to the unruliness of a child, under R.C. 2919.24, following a jury trial in the Hamilton County Court of Common Pleas, Juvenile Division. The trial court denied the appellant's motion for a new trial, but granted a stay of execution of the sentence pending this appeal. For the reasons that follow, we reverse the judgments of the trial court and, in case Nos. C–900329, C–900330 and C–900331, remand this cause for further proceedings in accordance with law. We discharge the appellant from further prosecution in case No. C–900332.

The appellant was employed as a teacher at the Millcreek Psychiatric Center for Children, a facility for emotionally disturbed children. Lesley Brock, a thirteen-year-old girl, was a patient at the facility and a student of the

appellant. Although some facts are disputed, the appellant does not deny that on four separate occasions he kept Brock after class.

Brock was transferred to the United Methodist Children's Home in Columbus, Ohio. She told personnel there what had occurred and gave them cards, letters and pictures that the appellant had given to her. The appellant was terminated following an administrative hearing held on October 23, 1989, in which he denied the accusations against him.

In his second, and most compelling, assignment of error, the appellant asserts that the trial court committed plain error by improperly instructing the jury on the correct definition of "beyond a reasonable doubt." The fourth assignment of error contends that the appellant was denied effective assistance of trial counsel because counsel failed to object to the improper instruction. Because we find the fourth assigned error is subsumed in the second assignment, we will discuss them together.

R.C. 2901.05(D) defines "reasonable doubt" as follows:

" 'Reasonable doubt' is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs."

The trial court gave a markedly different definition, given to us in a corrected transcript of the proceedings:

"Now reasonable doubt is defined as follows: It is not a mere possible doubt, because everything relating to human affairs or depending upon evidence is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that state that they cannot say—you cannot say that you feel an abiding conviction amounting to a moral certainty of the truth of the charge. In other words, you are convinced beyond a reasonable doubt and that you have looked at all of the evidence, compared it, considered it, weighed it carefully."

The last sentence of the given definition is particularly significant to us because it serves to tie reasonable doubt to how thoroughly the jurors examined the evidence and not to how well the state had met its burden of proof. The idea that a defendant is presumed innocent until his guilt is established beyond a reasonable doubt is the very cornerstone of our criminal

justice system. It is, by design, a difficult standard to meet, and any charge to the jury which lessens the standard or which leaves the jury uncertain as to what the standard is or how it is to be applied is not acceptable.

The mandate conveyed to the courts of Ohio by the General Assembly in R.C. 2901.05(B) is stark. Every court in which a criminal case is presented must read the definitions of "reasonable doubt" and "proof beyond a reasonable doubt" contained in R.C. 2901.05(D). The clarity of such direction admits of no doubt. Any amplification of such statutory definitions invites mischievous confusion and undercuts the uniformity of treatment of an accused which must be afforded in courts administering criminal law. Any embroidery upon what the legislature has given in the statute must, in our opinion, not only be discouraged, but forbidden.

The state argues that the appellant did not object to the instruction at trial and, therefore, any objection now is waived. However, we hold that the jury instruction concerning reasonable doubt constitutes plain error. Plain error is reversible error not objected to at trial which, if permitted, would have a material adverse effect on the character and public confidence in judicial proceedings and would substantially prejudice the appellant. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001; *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144; *State v. Craft* (1977), 52 Ohio App.2d 1, 6 O.O.3d 1, 367 N.E.2d 1221.

In its memorandum supporting its application to reconsider our original decision, the state submits that the word "and" in the penultimate line of the court's instruction upon "reasonable doubt" removes any distortion of the definitions of "reasonable doubt" and "proof beyond a reasonable doubt." Resultantly, the instruction, so argues the state, while not in the form required by law, did not prejudice the appellant.

We cannot agree. To us, the effect of the charge is plain: it served to mislead the jury in that it connects "reasonable doubt" with the thoroughness with which the members of the jury examine the evidence and not to the ultimate effect of the totality of the evidence contemplated, *viz.*, that the state has proved the accused to be guilty beyond a reasonable doubt.

For the reasons outlined above, we sustain the appellant's second and fourth assignments of error. Although this alone is sufficient to reverse the judgment of the court below, we now, pursuant to App.R. 12(A), address the remaining assignments of error.

■ In his first assignment of error, the appellant argues that the trial court erred by admitting testimony from Peter Steele, the appellant's supervisor, that the appellant was dismissed following the administrative hearing

which was prompted by the criminal charges brought against him. Steele testified that as a result of the factfinding hearing, a decision was made to remove the appellant from employment. There is no indication in the record as to how the actual decision to terminate him was made or what standard of proof, if any, was applied.

The Ohio Supreme Court, in *State v. Snyder* (1952), 157 Ohio St. 15, 47 O.O. 24, 104 N.E.2d 169, has held that a judgment in a civil action is not admissible in a criminal trial to establish the facts essential to a conviction of the offense charged. The reasons behind such a rule are fundamental. In a criminal trial, the burden of proof rests solely on the state, and the standard of proof required is beyond a "reasonable doubt." The defendant need not produce anything to establish his innocence. He is presumed to be innocent until the state overcomes the presumption with proof beyond a reasonable doubt of his guilt.

Although the record does not make certain what criteria and standards were in place to review the claims against the appellant at the hearing in which he was terminated, we know that a civil proceeding, such as an administrative hearing, is not governed by the rigid standards of a criminal proceeding.

In addition, we hold that the evidence of the appellant's dismissal at the hearing was not relevant, as defined by Evid.R. 401, because it did not tend to make the existence of a consequential fact more or less probable than it would have been if such evidence had been excluded. In other words, the fact that the appellant was terminated following an administrative hearing did not tend to prove or disprove any facts concerning the criminal charges against him. Furthermore, the admission of such evidence had a prejudicial effect that clearly outweighed its probative value. The jury was likely to believe that another body had already determined that the appellant had done what he was accused of, and that otherwise he would not have been fired from his job.

We hold that the trial court erred in admitting testimony concerning the appellant's termination from his employment and, therefore, sustain the first assignment of error.

In his sixth assignment of error, the appellant argues that the trial court erred in denying his Crim.R. 29 motion for acquittal and in entering judgment on one of the four complaints because that complaint did not state an offense against him. The seventh assignment of error asserts that the trial court erred in answering the jury's question as to the definition of "sexual relations" and in permitting the jury to render a guilty verdict on the count in question.

Three of the complaints against the appellant alleged that he contributed to Brock's unruliness by engaging in "sexual contact" with her. The fourth

complaint substituted the term "sexual relations" for "sexual contact." The term "sexual relations" is not a legal term and has no statutory definition. During the jury's deliberations, the jury inquired of the court, "What is the difference between sexual relations and sexual contact?"

The trial judge stated to the jury the definitions of "sexual contact" and "sexual conduct." He then explained that "sexual relations" is not a legal term and proceeded to read the complaint containing that term to the jury in its entirety. He then told the jury, "I'm going to depend upon your judgment as jurors and your understanding of the terms. * * * Now it's in your court at this time. All right?"

In the decision we have set aside in response to the parties applications for reconsideration, we held that the use of the term "sexual relations" in the fourth complaint entitled the appellant to a discharge on that one complaint only, because the term's lack of statutory definition resulted in a failure to state an offense recognized under Ohio law. Although our reasoning has not, in this respect, been questioned by either party as a basis for reconsideration in this case, we deem it circumspect, upon further review of the record, to rely on a different ground to sustain a conclusion that otherwise remains in the appellant's favor. On the state of this record, we are now persuaded that the appellant is entitled to a discharge on the fourth complaint not because that complaint failed to state an offense, but because there was, under the evidence adduced at trial, an insufficient predicate in law to sustain a conviction.

Consequently, we hold that the trial court erred in overruling the appellant's motion for acquittal on the charge lodged in case No. C–900332 and in allowing the jury to render a guilty verdict on that charge. We, therefore, sustain the sixth and seventh assignments of error and discharge the appellant as to the charge involved in case No. C–900332.

In the appellant's eighth assigned error, he argues that the trial court erred by overruling his motion for discovery of the victim's chart. In conjunction with that assignment of error, the ninth assignment of error asserts that the trial court erred in denying the appellant's motion for a new trial on the grounds that his motion for discovery had been denied.

The appellant argues that, at the very least, the trial court should have inspected the victim's chart *in camera* to determine if it contained any material relevant to the appellant's guilt and, if so, allowed the appellant access to that material. We agree.

The United States Supreme Court, in *Pennsylvania v. Ritchie* (1987), 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40, looked at this issue in a factually similar

case involving the rape of a thirteen-year-old girl by her father, who, in preparation for trial, attempted to obtain the girl's records from a social service agency for children. He was denied access and convicted. The court held that, while the defendant could not be given unlimited, unsupervised access to the confidential records he sought, the interest of insuring a fair trial did require that the records be submitted to the trial court for an *in camera* review and that the defendant be given access to those portions which were necessary for his defense.

In the case before us, we hold that the trial court should have held an *in camera* inspection of Brock's medical records to determine if anything contained therein would have been useful to the appellant in his defense. Because such a determination was not made, the trial court did not have an appropriate basis for denying the appellant's motion for discovery and demand for a new trial, and to this limited extent the appellant's eighth and ninth assignments of error are well taken.

The appellant's fifth assignment of error alleges that the trial court erred by imposing four consecutive six-month sentences and maximum fines, in violation of R.C. 2929.41.

R.C. 2929.41(E)(3) provides that consecutive terms of imprisonment to be imposed for misdemeanors shall not exceed an aggregate term of eighteen months. The appellant's sentence totalled twenty-four months. We hold that it was error for the trial court to impose a sentence which exceeds the sentencing guidelines of R.C. 2929.41(E)(3). However, the Ohio Supreme Court has held that while the imposition of a sentence which exceeds the sentencing guidelines of R.C. 2929.41(E) is error, it is not reversible error because R.C. 2929.41(E) is self-executing and operates automatically. See *State v. White* (1985), 18 Ohio St.3d 340, 18 OBR 381, 481 N.E.2d 596.

The appellant's third assignment of error asserts that the trial court committed plain error by permitting the prosecutor to make an improper and prejudicial argument to the jury. The appellant argues specifically that the prosecution attempted to shift the burden of proof to him to establish his innocence.

To determine whether remarks made during closing arguments by a prosecutor violate a defendant's due process rights, a two-part analysis is used: (1) Were the prosecutor's remarks improper? and (2) if so, were the defendant's substantial rights affected? *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293; *State v. Spencer* (May 15, 1991), Hamilton App. No. C–900008, unreported, 1991 WL 81661.

The prosecutor commented that the appellant could have brought in his own handwriting expert (to rebut the testimony of the state's expert) but he

did not. The state did not say the appellant was required to produce an expert to rebut. Rather, the prosecutor was merely suggesting that it would have added credibility to the appellant's denials that he wrote the cards and letters in question to Brock.

At the beginning of his closing argument, the prosecutor told the jury that the state carried the burden of proof. In his instructions to the jury, the trial court also made it clear that it was the state's burden to prove all the essential elements of the crimes charged.

A prosecutor is generally given wide latitude to comment in his closing argument, but may not intentionally mislead the jury. *Spencer, supra.* After a complete review of the closing arguments of the prosecutor, we are not persuaded that the comments made to the jury were improper or attempted to shift the burden to the appellant to establish his innocence. Because we hold that the prosecutor's remarks were proper, we, consequently, find no plain error in the trial court's failure to strike such comments. The appellant's third assignment of error is overruled.

For the reasons discussed above, our decision entered August 21, 1991 is reconsidered. The judgments of the trial court are reversed, and, in case Nos. C–900329, C–900330 and C–900331, the cause is remanded for further proceedings in accordance with law. In case No. C–900332, the appellant is discharged from further prosecution.

*Judgment accordingly.*

SHANNON, P.J., KLUSMEIER and HILDEBRANDT, JJ., concur.