■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TAYDEN TOWNSLEY, Also Known as T-ROCK, Appellant. [659 NYS2d 906] —Cardona, P. J. Appeal from a judgment of the

County Court of Sullivan County (Czajka, J.), rendered June 23, 1995, upon a verdict convicting defendant of the crimes of murder in the second degree, criminal possession of a weapon in the second degree (two counts), attempted murder in the second degree, assault in the first degree and criminal use of a firearm in the first degree (two counts).

On July 1, 1994, 16-year-old Lynell James was found dead from a gunshot wound to the back of his head at Beverly Garden Apartments, located in the Town of Fallsburg, Sullivan County. The assailant also shot and wounded Johmar Brangan, an acquaintance of the victim. Fallsburg Police Department Detective Bart Rasnick interviewed people outside the crime scene and learned the street name of a possible suspect. The name given was "T-Rock". Rasnick asked Sharanda Gambel if she knew who T-Rock was and she indicated that he should know because he had arrested T-Rock a year earlier. Rasnick then went to an apartment where he knew T-Rock and his brother had left some clothing and a book bag. In the book bag he found the name "Townsley". The name matched the arrest record. Rasnick obtained a photograph of defendant from the previous arrest and showed it to Gambel, who confirmed that Townsley was T-Rock. Thereafter, an arrest warrant was issued for defendant.

On July 12, 1994, Police Officer Edward Liotard and several other officers went to a building in response to a reported sighting of defendant. Hearing movement on top of the building, the officers went around to the front and observed defendant coming out a window. Liotard told defendant to "freeze" and defendant complied. While the Police Chief watched defendant, Liotard went upstairs and pulled defendant back through the window. Liotard asked defendant if he was Tayden Townsley and defendant responded that he was not. When asked by Liotard who he was, defendant mumbled some incomprehensible first name and stated that his last name was Anderson. Joined by the Police Chief, Liotard again asked defendant his name and was told "Anderson". The police asked him if he was Tayden Townsley and were told no. Liotard removed defendant's baseball cap and recognized him as Townsley, one of several persons he had previously questioned in an unrelated investigation.

Defendant was arrested and charged in an eight-count indictment with one count of murder in the second degree, two counts of criminal possession of a weapon in the second degree, one count of attempted murder in the second degree, one count of assault in the first degree, two counts of criminal use of a

firearm in the first degree and one count of criminal possession of a weapon in the third degree. Following a combined *Huntley-Wade* hearing, defendant was tried before a jury and convicted of all charges, with the exception of criminal possession of a weapon in the third degree—the jury did not consider this charge because it found defendant guilty of criminal possession of a weapon in the second degree. Defendant was sentenced to an aggregate prison term of 37$^1$/$_2$ years to life. Defendant appeals.

Defendant first argues that County Court committed error when it failed to suppress his statements to Liotard because they were made in the absence of *Miranda* warnings. We disagree. Although defendant was in custody at the time Liotard questioned him regarding his identity, it is well settled that the police are entitled to make a reasonable inquiry to establish an arrestee's identity without the need for formal warnings (*see, People v Rivera*, 26 NY2d 304, 309; *People v Perez*, 198 AD2d 540, 541-542, *lv denied* 82 NY2d 929; *People v Nelson*, 147 AD2d 774, 775, *lv denied* 74 NY2d 794; *see also, People v Rodney*, 85 NY2d 289, 292-293).

Defendant next contends that County Court erred when it failed to suppress Gambel's prospective in-court identification testimony. We conclude that the prosecution's decision not to call Gambel as a witness at trial rendered this issue moot since reversal of County Court's suppression ruling under such circumstances would have no effect on defendant's rights (*see, Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714).

We also find no error in County Court's ruling which precluded the admission into evidence of Brangan's emergency room records containing a reference that he had been shot in a drive-by shooting. Vladimar Andres, the emergency room physician who treated Brangan, testified that the manner in which Brangan sustained his gunshot wounds was not relevant to his treatment or diagnosis. Furthermore, Brangan denied telling emergency room personnel that he had been injured in a drive-by shooting. Since Andres' testimony established that the reference to the shootings was not germane to Brangan's treatment and diagnosis (*see, Williams v Alexander*, 309 NY 283, 288) and the source of the information on the hospital record was unknown (*see, Ginsberg v North Shore Hosp.*, 213 AD2d 592, *lv denied* 86 NY2d 701), the record was properly ruled inadmissible under the business records exception to the hearsay rule (*see,* CPLR 4518 [a]).

Defendant further argues that County Court improperly denied his application for a missing witness charge based on

the People's failure to call Simeon Nelson to testify. As the party seeking the charge, defendant had the initial burden of proving that Nelson "was under the control of the People and that his testimony would be relevant, noncumulative and beneficial to them" (*People v Swinton*, 200 AD2d 892, 894, *lv denied* 83 NY2d 1007; *see, People v Gonzalez*, 68 NY2d 424, 427). Although defendant made a showing that Nelson was available to the People, and knowledgeable about a material issue upon which evidence was already in the case, he failed to show that Nelson's testimony would be noncumulative. Notably, the People called Aaron Aubrey, who testified that he saw defendant shoot James. Under the circumstances, defendant was not entitled to the missing witness charge.

We find no merit to defendant's next contention that County Court improperly instructed the jury on criminal intent in relation to the charge of murder in the second degree. The court charged as follows:

"According to the law, a person intends to cause the death of another person when his conscious aim or objective is to cause the death of that person.

"It is not necessary for the People to establish that the intent to kill was present in the mind of the Defendant for any period of time before he shot Lynell James in the head. It is sufficient if you find that such intent to kill was in the mind of the Defendant at the time that he did so, that is, at the time he shot Lynell James in the head."

Defendant objects to the last phrase of County Court's charge contending that it improperly conveyed the impression that the court had concluded that defendant shot James, thereby removing this issue of fact from the jury's consideration. In rejecting this contention, we note that the court followed the Pattern Jury Instructions on criminal intent, as they then existed, verbatim (2 CJI [NY] PL 125.25 [1], at 204-205; *see generally, People v Bernard*, 222 AD2d 599, *lv denied* 88 NY2d 844). Moreover, at the beginning of its charge County Court specifically instructed the jury: "You must not take any of my rulings or anything else I said or say to you now as meaning that I have any opinion in this case one way or the other." Viewed in context, we find that the intent charge was proper.

Defendant also urges reversal on the ground that the prosecutor erroneously shifted the burden of proof during his summation when he questioned defendant's failure to call his brother, Salee Townsley, known by the street name "Smooth", as a witness. We disagree. There was conflicting testimony as to whether Smooth was in the apartment at the time of the shooting. The prosecutor's remarks were made in response to defense counsel's statements during summation that Smooth

was not in the apartment and, as such, we cannot say that the prosecutor's remarks were improper (*see, People v Tankleff*, 84 NY2d 992, 994; *People v Bombard*, 203 AD2d 711, 713, *lv denied* 84 NY2d 823; *People v Taylor*, 172 AD2d 784, 785, *lv denied* 78 NY2d 958). Moreover, despite defense counsel's failure to request a curative instruction that no negative inference may be drawn from defendant's failure to call a witness, the court did ultimately charge that defendant was not required to prove anything and that the People's burden never shifts. Although the prosecutor's reference to Smooth having been "in and out" of court during the trial was not supported by the record and, therefore, improper, defendant has failed to show that this remark, particularly when viewed in the context of the entire summation, had " 'a decided tendency to prejudice the jury' " (*People v Halm*, 81 NY2d 819, 821, quoting *People v Ashwal*, 39 NY2d 105, 110) so as to deprive him of a fair trial.

In his *pro se* brief, defendant contends that he was deprived of his constitutional right to a trial by a jury of his choice (*see, People v Anderson*, 70 NY2d 729) when County Court discharged one of the sworn jurors due to illness and substituted an alternate. Our review of the record reveals that on the date when the juror did not appear, the People had completed its proof, the defense was scheduled to begin its case and the jury was expected to receive the case to begin deliberations the next day. Before acting to discharge the juror, County Court conducted an inquiry into the juror's absence and ascertained that the juror had been hospitalized for pneumonia and pleural effusion and was not expected to be discharged either that day or the next day. We are satisfied that County Court made "a reasonably thorough inquiry and recitation on the record of the facts and reasons for invoking the statutory authorization of discharging and replacing a juror based on continued unavailability" (*People v Page*, 72 NY2d 69, 73; *see*, CPL 270.35 [2] [a];* *People v Lesiuk*, 81 NY2d 485, 491).

Finally, we find no merit to defendant's argument that the sentence imposed was harsh and excessive. Neither defendant's age at the time of the shootings (19) nor the fact that he lacked a criminal record negate the heinous nature of his acts (*see, e.g., People v Motter*, 228 AD2d 582, 589); nor do these factors warrant a reduction of the sentence in the interest of justice (*see*, CPL 470.15 [6] [b]).

---

* The statutory requirement of a "reasonably thorough inquiry" (CPL 270.35 [2] [a]) was added by amendment to CPL 270.35 (*see*, L 1996, ch 630, § 1) through a new subdivision (2) effective October 4, 1996, which was subsequent to the commission of the instant crimes. Nevertheless, the rule as enunciated in *People v Page* (*supra*) is applicable to the instant case.

White, Casey, Spain and Carpinello, JJ., concur. Ordered that the judgment is affirmed.

