■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DOUGLAS E. BEYER, Appellant. [799 NYS2d 620]—

Kane, J. Appeal from a judgment of the County Court of Montgomery County (Catena, J.), rendered March 30, 2004, upon a verdict convicting defendant of the crimes of driving while intoxicated and aggravated unlicensed operation of a motor vehicle in the first degree.

At approximately 10:15 P.M. on April 25, 2003, a passing motorist noticed a pickup truck at a 45-degree angle in a ditch along a rural road. As the motorist pulled alongside the truck, she observed defendant sitting in the driver's seat, with the engine running, attempting to drive the truck out of the ditch. She asked if defendant was hurt, to which he responded that he was all right and did not need any help. Because she suspected that defendant was drunk and could not get the truck out of the ditch without help, she alerted Thomas Darling, the resident of a nearby house, and sent her husband to the scene. Her husband called the police. Darling observed the truck entirely in the four-foot-deep ditch, completely off the road's surface, at an angle so the passenger-side door was at the bottom of the ditch. He saw that defendant had slid toward the passenger side of the truck, but was trying to drive the truck out of the ditch with his left hand on the steering wheel and his left foot on the gas pedal. When defendant told Darling that he was all right and refused help, Darling observed that defendant seemed drunk because he slurred his words and had blood-shot eyes. In response to Darling's question regarding how the vehicle ended up in the ditch, defendant told him that his dog, who was present in the cab of the truck, had "messed me up."

The first police officer to arrive, Kevin Natalie, observed the truck at a 45-degree angle with the engine running and lights on. Natalie observed tire tracks in the dirt leading from the road to the ditch. He smelled a strong odor of alcohol inside the truck and noticed defendant's glassy eyes and slurred speech. Defendant refused to exit the vehicle and the dog acted in a menacing manner when Natalie tried to remove defendant. Following the arrival of two other officers, the police extricated defendant from the truck. Defendant was unsteady on his feet and refused to submit to field sobriety tests, stating that he was drunk. When questioned as to what happened, defendant told Natalie that he had been heading home and he had one drink of liquor in the truck, but he denied driving and refused to name

the driver. An empty vodka bottle was later found in the truck. After defendant was arrested and provided with the driving while intoxicated (hereinafter DWI) refusal warnings (*see* Vehicle and Traffic Law § 1194 [2] [b]), he refused to submit to a chemical test to determine the alcohol content of his blood.

Following trial, the jury convicted defendant of DWI and aggravated unlicensed operation of a motor vehicle in the first degree. County Court denied his motion to set aside the verdict, then sentenced him to 2 to 6 years in prison on the DWI charge and 1⅓ to 4 years on the aggravated unlicensed operation charge. Defendant appeals.

Legally sufficient evidence established that defendant was operating a motor vehicle on a public highway while intoxicated. A person can be prosecuted for DWI upon, among other places, "public highways" (Vehicle and Traffic Law § 1192 [7]). Defendant contends that the proof was insufficient because there was no testimony that he drove on the roadway itself, only that he attempted to move the vehicle from the ditch and a ditch is not part of a public highway. The Vehicle and Traffic Law broadly defines a public highway as "[a]ny highway, road, street, avenue, alley, public place, public driveway or any other public way" (Vehicle and Traffic Law § 134). Although not further defined in the Vehicle and Traffic Law, under the Highway Law the term highway is "deemed to include necessary sluices, drains, ditches" and similar accouterments (Highway Law § 2 [4]). Thus, a ditch is part of a highway (*compare People v Haszinger*, 149 Misc 2d 856 [1991] [car six feet into grassy lawn off parkway exit ramp was on public highway for DWI purposes]).

While the truck apparently never moved when defendant tried to drive it out of the ditch, due to it being inextricably stuck, "the term 'operate' as used in the Vehicle and Traffic Law is broader than the term 'drive' and extends to a situation where a motorist begins to engage the motor for the purpose of putting the vehicle into motion" (*People v Totman*, 208 AD2d 970, 971 [1994] [citation omitted]; *see People v Prescott*, 95 NY2d 655, 662 [2001]; *People v Alamo*, 34 NY2d 453, 458-459 [1974]). Several witnesses testified that they observed defendant in the vehicle, with the engine running and lights on, attempting to drive the truck out of the ditch, sufficiently proving that he operated the vehicle in that part of a public highway (*see People v Totman, supra*; *People v Marriott*, 37 AD2d 868 [1971]).

The evidence of defendant's impaired condition and refusal to submit to a chemical test was sufficient to prove his intoxication (*see People v Gallup*, 302 AD2d 681, 683 [2003], *lv denied*

100 NY2d 594 [2003]; *People v Hasenflue*, 252 AD2d 829, 831-832 [1998], *lv denied* 92 NY2d 982 [1998]). Witnesses testified that defendant had glassy or blood-shot eyes, slurred his speech, had difficulty standing or maintaining his balance, smelled of alcohol and admitted that he had been drinking and was drunk. Defendant refused to submit to a chemical test to determine his blood-alcohol content, despite the administration of proper warnings, which refusal is admissible to demonstrate consciousness of guilt (*see* Vehicle and Traffic Law § 1194 [2] [f]; *People v Gallup, supra* at 683). Considering all of the testimony, the verdict was supported by legally sufficient evidence.

The prosecutor's summation did not deprive defendant of a fair trial. While some of the prosecutor's statements implied that defendant had some burden of proof, some of the statements objected to were fair comment on the evidence or in response to the defense summation (*see People v Townsley*, 240 AD2d 955, 958-959 [1997], *lv denied* 90 NY2d 943 [1997]). Additionally, when defendant objected to statements that did impermissibly attempt to shift the burden, County Court immediately instructed the jury that the burden of proof was on the People and to disregard the improper statements, thereby diluting the effect of the improper conduct (*see People v Youmans*, 292 AD2d 647, 648 [2002], *lv denied* 98 NY2d 704 [2002]; *People v Townsley, supra* at 959). In the context of the entire trial, the curative instructions and the charge to the jury which addressed the proper burden of proof ameliorated any prejudice to defendant (*see People v Dworakowski*, 208 AD2d 1129, 1130 [1994], *lv denied* 84 NY2d 1031 [1995]).

Under these circumstances, we cannot say that County Court abused its sentencing discretion or that the sentence was harsh and excessive (*see People v Gorga*, 268 AD2d 614, 615 [2000]; *People v Owens*, 242 AD2d 797, 798 [1997]). The court was aware of defendant's diagnoses of cirrhosis of the liver and prostate cancer, and his doctor's assertion that defendant had at most two to three years to live. Despite this medical situation, the court felt that an indeterminate sentence with a maximum possibility of six years was appropriate due to defendant's criminal record, this being his fourth drinking and driving offense, and the fact that his license was suspended due to a previous DWI and test refusal at the time that he committed this crime.

Cardona, P.J., Crew III, Spain and Carpinello, JJ., concur. Ordered that the judgment is affirmed.