**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Gonzalo Dalimiro SANTANA, Respondent.**

**No. 09SC808.**

Supreme Court of Colorado, En Banc.

June 27, 2011.

John W. Suthers, Attorney General, Rhonda L. White, Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner.

Leslie A. Goldstein, Attorney at Law, L.L.C., Leslie A. Goldstein, Steamboat Springs, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

In *People v. Santana,* 240 P.3d 302 (Colo. App.2009), the court of appeals reversed Gonzalo Dalimiro Santana's conviction for distributing a controlled substance, concluding that the prosecution had, in violation of

his constitutional rights, shifted the burden of proof to him at trial. In its case-in-chief, the defense called an expert to testify that the prosecution's tests conducted on the substance alleged to be crack cocaine were only screening tests, which did not conclusively show that the substance was crack cocaine. According to the court of appeals, the prosecutor shifted the burden of proof by cross-examining this expert about his ability to perform conclusive tests, establishing that the expert could in fact have run such tests, and then by emphasizing this testimony in closing argument.

We now reverse the judgment of the court of appeals, concluding that the prosecutor did not shift the burden of proof to the defendant. In reaching our conclusion, we find it significant that before the prosecutor questioned the defense's expert about his ability to conduct conclusive tests, defense counsel first introduced evidence of the expert's ability to run such tests, which neither the court of appeals nor appellate counsel mentioned.

## II.  Background

One evening in January 2007, as part of an undercover operation to discover street-related crime, including the sale of narcotics, a plain-clothes police officer driving around in an unmarked car noticed the defendant standing in a parking lot. When the two made eye contact the defendant nodded, waved, and shouted out, "You want dope?" The officer left the scene, apprised surrounding officers of the situation, turned on his electronic monitoring device, drove back to the parking lot, and again made eye contact with the defendant, who then got into the unmarked car.

The officer asked for $40 worth of crack cocaine, and the two then went to an apartment complex nearby where the defendant said he could get it. At the complex, the officer gave money to the defendant, who went into one apartment and returned with a whitened, colored substance that the officer recognized to be similar in texture and appearance to crack cocaine.

The officer said, "Let me smoke it right here," to which the defendant said, "Man, I'm real, you know what I'm saying." The officer then joked with the defendant that he had taken his cut of the cocaine on the way down from the apartment, but the defendant said "no, he takes care of me." The officer assumed the defendant was referring to the narcotics supplier the defendant had just visited. After driving away from the apartment, the defendant said that he's always at a certain intersection and that the officer should stop to see him again. A few blocks away from the apartment, other officers pulled the car over, subsequently arresting the defendant. Later, the officer conducted a field test on the substance, which tested positive for the presence of cocaine. The officer forwarded the substance to a crime laboratory, which provided a presumptive test result indicating the presence of cocaine.

At trial, the prosecution's sole witness was the undercover officer, who testified about his drug transaction with the defendant. Through the officer, the prosecution entered into evidence, and the jury listened to, the electronic-monitoring-device recordings of the transaction between the defendant and the undercover officer. The prosecution also admitted the crime-laboratory report containing the presumptive test result for the substance the defendant gave to the officer, which indicated the presence of cocaine. On cross-examination, defense counsel admitted evidence of another test—a field test—conducted by the undercover officer, which had also indicated the presence of cocaine.

To challenge these two test results, in his case-in-chief the defendant called his only witness: an expert, qualified in forensic toxicology and analytical chemistry with experience in drug analysis, to testify about the tests' reliability and meaning.

The defendant's expert testified that the officer's and crime-laboratory's presumptive test results were only field tests, screening tests, which may be able to establish that a substance is not an illegal substance, but which cannot definitively show that a substance is an illegal substance. The expert opined that additional testing, like gas or liquid chromatograph mass spectrometry, would be necessary to prove that the substance in this case was actually crack cocaine.

Well before the prosecution cross-examined this expert about his ability to conduct these tests—which the court of appeals believed shifted the burden of proof to the defendant—defense counsel asked questions establishing the expert's testing capabilities. On direct-examination, the expert testified that: (1) he had run conclusive drug tests in the past; (2) his laboratory contained all the equipment necessary to run conclusive drug tests; and (3) generally, his laboratory has the "opportunity" to run conclusive drug tests. Defense counsel also asked whether, based on the evidence submitted by the prosecution, the expert could form an opinion over whether there was "any test performed that would conclusively establish" the presence of cocaine in the substance in this case, and the expert said there was not.

On cross-examination, the prosecutor confirmed that the expert could have run the tests that would have established whether the substance was crack cocaine. Defense counsel objected to this line of questioning, claiming that it shifted the burden of proof, but the court said that it believed the prosecutor was aware that he could not make that argument, because he would then be faced with a motion for mistrial. Later on in the cross-examination, the prosecutor asked the expert if he would have tested the substance to confirm whether the substance was crack cocaine had he been given the opportunity, and defense counsel again objected on burden-of-proof grounds, and this time moved for a mistrial. The trial court denied the motion, stating it would, if necessary, renew its affirmation that the defendant had no burden of proof, but defense counsel never made a request for the trial court to do this.

Before closing arguments, the trial court properly instructed the jury on the defendant's presumption of innocence, and during closing argument, told them that the arguments were not evidence. In his closing argument, the prosecutor told the jury that they should not consider closing arguments as evidence, and then proceeded to discuss the evidence in the case, including the defense's expert witness's testimony. The prosecutor compared the evidence offered by the prosecution with the evidence offered by the defense's expert, stating that all the expert did in this case was to review two documents and say that the substance "wasn't absolutely cocaine." The expert "didn't tell you about any analysis he did. He didn't tell you about whether he spoke to" the undercover officer or chemist who ran the tests. Defense counsel again objected and moved for a mistrial, which the trial court denied, agreeing with the prosecutor that the statements only commented on the state of the evidence.

In his closing argument, defense counsel explained more than once which party bears the burden of proof. Defense counsel also argued that the state's evidence was "absolutely sloppy if not totally unscientific," generally bemoaning the "incredible lack of testimony in this case," and claiming that the prosecution had not called an expert to testify about more conclusive tests possibly conducted because the expert "did not want to share the answer."

In his rebuttal, the prosecutor did not comment on the defense expert's testimony, focusing instead solely on the transaction between the defendant and the undercover officer, arguing that from that transaction alone, the jury knew the defendant had sold crack cocaine.

The jury convicted the defendant of distributing a controlled substance, which the court of appeals reversed, determining that the trial court should have granted the defendant's motion for a mistrial. *Santana*, 240 P.3d at 309. First, the court concluded that the prosecutor's questions to the defense's expert witness and subsequent comment in closing argument shifted the burden of proof to the defendant. *Id.* at 308. Second, the court determined that because constitutional error was involved, the trial court's denial of the motion for mistrial should be reviewed under the constitutional harmless-error standard instead of an abuse-of-discretion standard. *Id.* at 309. Third, applying the constitutional harmless-error standard, the court held that the error was not harmless beyond a reasonable doubt in part because, on the critical issue of whether the substance was crack cocaine, the evidence was "somewhat

thin." *Id.* at 308–09. Accordingly, the court ordered a new trial. *Id.* at 309.

We granted certiorari to assess the court of appeals' determination that the constitutional harmless-error standard of review should apply in this case, as well as its conclusion that the prosecution shifted the burden of proof, requiring a new trial.[1] For the reasons below, we conclude that the prosecution did not impermissibly shift the burden of proof in this case, and that accordingly the trial court did not abuse its discretion in denying the defendant's motion for a mistrial. Hence, we do not consider the standard-of-review issue.

### III. Analysis

■ We reverse the court of appeals, concluding that, in light of the entire record, the prosecutor's cross-examination and closing did not shift the burden of proof in this case. Instead, the prosecutor's actions seemed designed to highlight the strength of the prosecution's case and dispel negative implications stemming from defense counsel's questioning of its expert. Further, to any extent that burden shifting was encouraged in this case it was dispelled by the burden-of-proof instructions given by the court and the arguments of counsel. Therefore, the trial court did not abuse its discretion in denying the defendant's motion for a mistrial.

■ Where a defendant claims that a trial court's refusal to declare a mistrial violates his constitutional rights, our "first step ... is to determine if an error occurred." *Bloom v. People,* 185 P.3d 797, 805 (Colo.2008) (quoting *Medina v. People,* 114 P.3d 845, 857 (Colo.2005)). We may consider whether such error an error exists based on "the totality of the circumstances." *See id.* at 806. " 'In the absence of a constitutional violation, it is well-established that the decision to grant or deny a motion for a mistrial is directed to the sound discretion of the trial court,' and the

court's decision 'will not be disturbed absent a clear showing of an abuse of discretion and prejudice to the defendant.'" *Id.* at 807 (quoting *People v. Chastain,* 733 P.2d 1206, 1213 (Colo.1987)).

■■ The defendant claims his constitutional rights were violated under the Due Process Clause of the Fourteenth Amendment, which "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Francis v. Franklin,* 471 U.S. 307, 313, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (quoting *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). It is the prosecution's burden to establish "a prima facie case of guilt through introduction of sufficient evidence." *Clark v. People,* 232 P.3d 1287, 1291 (Colo.2010). This burden of proof never shifts: "It is not incumbent upon the defendant to prove anything to the satisfaction of the jury; rather, it is sufficient if he by any evidence in the case, succeeds in raising a reasonable doubt in the minds of the jury...." *Leonard v. People,* 149 Colo. 360, 372, 369 P.2d 54, 61 (1962).

■ Hence, "the prosecution cannot place upon a criminal defendant the burden of proving innocence through the testing of evidence." *People v. Clark,* 214 P.3d 531, 540 (Colo.App.2009), *aff'd on other grounds,* 232 P.3d 1287 (Colo.2010). A prosecutor may impermissibly shift the burden of proof through argument or comment. *See State v. Roman Nose,* 667 N.W.2d 386, 399 (Minn. 2003) ("[A] prosecutor may not comment on a defendant's failure to call witnesses or to contradict testimony because such comments might lead the jury to believe that the defendant has a duty to call witnesses or bears some burden of proof."). In addition, "improper questioning of an expert witness could imply to jurors that a defendant carries [the burden of proof]." *Clark,* 214 P.3d at 540.

---

1. We granted certiorari on the following issues:
   (1) Whether the court of appeals erred in its application of the harmless-error standard of review to the trial court's denial of a mistrial.
   (2) Whether the court of appeals erred in concluding that the prosecutor's questions to

the defendant's expert witness and comments on the expert's answers in closing argument improperly shifted the burden of proof and, if questions and comments shifted the burden of proof, that the error was not harmless.

■ But even though a prosecutor's comments and questions may imply a defendant has the burden of proof, such comments and questions do not necessarily shift the burden of proof, constituting error. Instead, courts must evaluate the strength of the prosecution's burden-shifting evidence or comment in light of the entire record to assess whether the burden was actually shifted. *See United States v. Vazquez–Botet*, 532 F.3d 37, 56–58 (1st Cir.2008) (concluding that because prosecutor's remark suggesting that defendants had the duty to present missing evidence did not "so poison[ ] the well," and were not "of a caliber that would inherently compel jurors to disregard their duty," no new trial was required); *State v. Stevenson*, 53 Conn.App. 551, 733 A.2d 253, 265–67 (1990) (concluding that, in light of the record, the prosecutor's potentially burden-shifting comments did not deprive the defendant of due process); *People v. Gant*, 202 Ill.App.3d 218, 147 Ill.Dec. 583, 559 N.E.2d 923, 927 (1990) (concluding that, in context, prosecutorial comment allegedly shifting the burden was not error); *Helm v. State*, 1 P.3d 635, 640–41 (Wyo.2000) (holding that, when viewed in context, prosecutorial burden-of-proof-shifting comment was a comment on the absence of evidentiary support for the defense's theory, and hence not error).

A prosecutor's burden-shifting actions fall on a spectrum. On one side of the spectrum are those actions that are most likely to shift the burden of proof, which often occurs when a prosecutor explicitly argues that a defendant needs to prove his innocence. *People v. Patterson*, 347 Ill.App.3d 1044, 283 Ill.Dec. 871, 808 N.E.2d 1159, 1168 (2004) (recognizing a difference in strength between a prosecutor introducing evidence implying the de-

fendant carries the burden and a prosecutor arguing the defendant carries the burden); *People v. Weinstein*, 35 Ill.2d 467, 220 N.E.2d 432, 433–34 (1966) (prosecutor's "persistent and repeated arguments to the jury" that the defendant "must create a reasonable doubt of her guilt" constituted prejudicial error in shifting the burden of proof); *People v. Grice*, 100 A.D.2d 419, 422–423, 474 N.Y.S.2d 152 (N.Y.App.Div.1984) (prosecutor's argument that the defendant failed to call a ballistics expert and take a lie detector test shifted the burden of proof).

On the other side of the spectrum are those actions that only tangentially and weakly imply the defendant bears the burden of proof, carrying little to no danger the jury will place the burden of proof on the defendant. *See, e.g., United States v. Wells*, 623 F.3d 332, 347 (6th Cir.2010) (recognizing that momentariness and isolation of prosecutorial questioning that could imply the defendant had the burden of proof, in addition to uncertainty about why the questioning was done in the first place, did not mislead the jury); *State v. Wilford*, 408 N.W.2d 577, 580 (Minn. 1987) (stating that prosecutor's questions implying the defendant had the burden of proof were "innocuous" and, in light of curative instruction, not error).

■ When assessing the strength of the prosecution's burden-shifting actions and whether they have shifted the burden of proof, courts mainly consider the degree to which: (1) the prosecutor specifically argued or intended to establish that the defendant carried the burden of proof;[2] (2) the prosecutor's actions constituted a fair response to the questioning and comments of defense counsel;[3] and (3) the jury is informed by

---

2. *See, e.g., Patterson*, 283 Ill.Dec. 871, 808 N.E.2d at 1168; *Weinstein*, 220 N.E.2d at 433–34; *cf. People v. Lehmkuhl*, 117 P.3d 98, 104–05 (Colo.App.2004) (holding that no burden shifting occurred in part because witness did not act intentionally in bringing up defense's capability to retest evidence).

3. *See, e.g., United States v. Palmer*, 37 F.3d 1080, 1086 (5th Cir.1994) (prosecutor's comments about subpoena power of defendant did not shift the burden of proof but were a response to defense counsel's argument); *State ex rel. McDougall v. Corcoran*, 153 Ariz. 157, 735 P.2d

767, 770 (1987) ("It strikes us as elemental fairness to allow the State to comment upon the defense's failure to adduce potentially exculpatory evidence to which defendant had access when defendant is attacking the accuracy of the State's evidence."); *People v. Leonard*, 40 Cal.4th 1370, 58 Cal.Rptr.3d 368, 157 P.3d 973, 1002 (2007) (holding that the prosecution's argument that the defense's expert did not testify about a critical fact relating to ownership of a gun despite having been called to testify about the crime scenes did not shift the burden of proof because the prosecution "was simply contending that the defense witnesses had not undermined" its case);

counsel and the court about the defendant's presumption of innocence and the prosecution's burden of proof.[4] We note that the first factor exploring the prosecutor's intent is often related to the second, which considers whether the prosecutor was in some way responding to defense counsel: the more a prosecutor is legitimately responding to questions and arguments raised by defense counsel, the less likely it is the prosecutor intended to shift the burden of proof.

We adopt these factors as a non-exhaustive guide to assess whether the burden of proof is actually shifted by a prosecutor's actions implying the defendant carries the burden. By measuring the burden-shifting strength of a prosecutor's actions, we reinforce our view that a motion for a mistrial is "the most drastic of remedies" that should only be granted "where the prejudice to the accused is too substantial to be remedied by other means." *Bloom*, 185 P.3d at 807. Additionally, by considering the strength of the burden-shifting actions in light of the whole record, we protect a prosecutor's ability to "comment on the lack of evidence confirming defendant's theory of the case." *People v. Medina*, 190 Colo. 225, 226, 545 P.2d 702, 703 (1976); *see also People v. Todd*, 189 Colo. 117, 121, 538 P.2d 433, 436 (1975) ("In protecting the accused against unfair comment, we are not compelled to limit advocacy or to gag the prosecution in legitimate oral argument covering the evidence and inferences which can be drawn from the evidence."). And finally, such an approach gives effect to

---

*Teoume–Lessane v. United States*, 931 A.2d 478, 491–92 (D.C.2007) (holding that trial court did not abuse discretion in allowing prosecutor to ask whether the defense had the right to perform scientific tests, because the prosecutor was rebutting the implication, raised by the defense on cross-examination, that the State's approach to testing had been biased); *Sanders v. State*, 21 So.3d 151, 154 (Fla.Dist.Ct.App.2009) (characterizing prosecutor's question asking whether the defense could have obtained certain evidence as a fair reply to defense counsel's questions, which established that evidence could have been obtained initially but was no longer available); *Roman Nose*, 667 N.W.2d at 399–400 (recognizing that the court did not abuse its discretion in allowing prosecutor's questions establishing that the defense could have retested evidence because they were, at least in part, a response to defense counsel's questions challenging the thoroughness and competency of testing done by the prosecution); *Helm*, 1 P.3d at 640–41 (stating that prosecutorial burden-of-proof-shifting comment was a comment on the absence of evidentiary support for the defense's theory, and thus not error). *But see Hayes v. State*, 660 So.2d 257, 265–66 (Fla. 1995) (holding that although defense counsel had asked a witness whether the prosecution had conducted certain testing, it was still prejudicial error for the prosecutor to question witness about the defense's capability of conducting such testing because it may have led the jury to believe that the defendant had an obligation to test the evidence); *People v. Beasley*, 384 Ill.App.3d 1039, 323 Ill.Dec. 558, 893 N.E.2d 1032, 1040 (2008) (finding that prosecutor's burden-shifting comments went too far and were effectively sanctioned by the trial court); *Grice*, 100 A.D.2d at 422–423, 474 N.Y.S.2d 152 (finding that prosecutor shifted the burden of proof by highlighting defendant's failure to call an expert witness and take a lie detector test).

4. *See, e.g., United States v. Diaz–Diaz*, 433 F.3d 128, 135 (1st Cir.2005) (holding that even if prosecutor's possible burden-shifting remarks were error, any error was "immediately and effectively" addressed by "prompt and thorough" instructions to the jury); *United States v. Paul*, 175 F.3d 906, 912 (11th Cir.1999) (stating that to whatever degree the prosecutor's comments may have shifted the burden of proof, any prejudice was cured by the court's and counsel's instructions to the jury); *Flowers v. State*, 738 N.E.2d 1051, 1058–59 (Ind.2000) ("[P]rosecutor's comments during closing argument inferring that the burden of proof shifted from the State to the defendant was 'de minimis' and cured by the court's preliminary and final [jury] instructions."); *State v. Caron*, 300 Minn. 123, 218 N.W.2d 197, 200 (1974) ("[I]nstructions by the trial court, if carefully worded, can ameliorate the effect of improper prosecutorial comment on a defendant's failure to call witnesses."), *abrogated on other grounds by State v. Ramey*, 721 N.W.2d 294 (Minn.2006); *People v. Townsley*, 240 A.D.2d 955, 958–59, 659 N.Y.S.2d 906, 909 (N.Y.App.Div.1997) (holding that prosecutor did not shift the burden of proof and observing that although defense counsel had not requested a curative instruction after potentially burden-shifting activity, the court "did ultimately charge that defendant was not required to prove anything and that the People's burden never shifts"); *State v. Black*, 78 Ohio App.3d 130, 604 N.E.2d 171, 176 (1991) (finding no error where prosecutor commented that the defendant could have produced his own handwriting expert but did not in part because the prosecutor and the court properly instructed the jury about the burden of proof); *State v. Gentry*, 125 Wash.2d 570, 888 P.2d 1105, 1122 (1995) ("Any possible implication that the Defendant had the burden of proof was corrected by this instruction regarding the presumption of innocence and the State's burden of proof.").

our presumption that juries follow the instructions they receive from trial courts. *People v. McKeel,* 246 P.3d 638, 641 (Colo. 2010); *People v. Ibarra,* 849 P.2d 33, 39–40 (Colo.1993) (observing that, in the absence of a showing of jury bias, "it is presumed that the jury understood and heeded the trial court's instructions").[5]

Here, the prosecutor never explicitly argued that the defendant has the burden of proof or was in any way obligated to have his expert witness perform and offer into evidence conclusive test results. Thus, the burden-shifting evidence in this case was more subtle and indirect than in those more egregious instances where the prosecutor explicitly argues the defendant bears the burden of proof.

Indeed, close examination of the entire record shows that the prosecutor's questions and comments were likely not designed to imply that the defendant bore the burden of proof, but were instead aimed at: (1) clarifying the defense's expert witness's testimony; (2) rebutting the implications—raised by the defense—that the prosecution failed to offer conclusive test results because those results would exonerate the defendant; and (3) highlighting the strength of the prosecution's case.

Our review of the record begins not with the prosecution's questions of the defense's expert witness, but with defense counsel's questions of its own expert. The court of appeals and appellate counsel never considered these questions in their burden-shifting analysis, but they are important because it was the defense that established the expert could have performed conclusive tests on the substance. For example, defense counsel

asked its expert, "Does your laboratory have an opportunity to do chemical testing on suspected drugs and do chemical testing for drug analysis?" The expert answered affirmatively. Later in the direct-examination, immediately after discussing what tests would conclusively establish whether the substance was crack cocaine, defense counsel asked the expert whether his lab was equipped with the equipment needed to run such tests, and whether he had run these types of tests in the past. The expert answered both of these questions affirmatively, too.

And in his closing argument, defense counsel again touched on the capacity of his expert to conduct tests by referring to the expert as someone, "who was a trained chemist, a trained doctor, 30 years or more of experience testifying for the government, testifying for other people, working cases, doing tests. With a certified laboratory, certified by the State of Colorado."

Through these questions and argument, defense counsel established that its expert could have run the tests—had the opportunity to run the tests—that might have exonerated the defendant. Defense counsel likely did not ask these questions to imply to jurors that the defendant had a duty to present exonerating test results, although that is one possible implication arising from such questioning; rather, they were most likely asked to bolster its expert, who had already been admitted as an expert in forensic toxicology and analytical chemistry with experience in drug analysis.

Other implications also arise from the fact—first established by the defense—that its expert could have performed exonerating

---

5. We also note that the framework we employ in this case is consistent with the framework we employ to assess prosecutorial misconduct. Although the defendant in this case does not argue that he should be entitled to relief under the rubric governing prosecutorial misconduct, the claim that a prosecutor shifted the burden of proof can be analyzed under such terms. *See generally* Prosecutorial Misconduct § 11:14 (2d ed.) (stating that prosecutorial misconduct may occur when a prosecutor attempts to shift the burden of proof to the defendant); *Smith v. State,* 702 N.E.2d 668, 676 (Ind.1998) (using prosecutorial misconduct standards to assess whether

the prosecutor impermissibly shifted the burden of proof). When assessing a claim of prosecutorial misconduct, trial courts must first assess whether misconduct occurs, and in that assessment it is often the case that "[t]he context in which [the] challenged prosecutorial remarks are made is significant." *Domingo–Gomez v. People,* 125 P.3d 1043, 1049–50 (Colo.2005) (quoting *Harris v. People,* 888 P.2d 259, 266 (Colo.1995)). This is consistent with our approach today, which considers whether the burden of proof was shifted to the defendant by measuring the strength of the prosecutor's burden-shifting actions in light of the entire record.

tests: if the defense's expert could have performed conclusive tests, then surely so could the prosecution. And flowing from this implication is a number of questions jurors could have asked in their exercise of "common sense to determine the question of guilt." *Clark,* 232 P.3d at 1293. First, considering there were no conclusive, scientific tests establishing that the substance was crack cocaine, jurors could have wondered whether the prosecution really offered enough evidence to prove that the substance was, beyond a reasonable doubt, crack cocaine, or whether the prosecution's investigation was sloppy, resulting in the prosecution's failure to satisfy its burden. Second, jurors may have asked why the prosecution failed to offer conclusive tests. The jurors could have speculated it was because no conclusive tests were performed, the prosecution fearing the results would exonerate the defendant, or perhaps that conclusive tests were performed, but the prosecution did not enter them into evidence because they exonerated the defendant.

Although some implications, especially the last one, seem a bit of a stretch, a review of the record shows some were intended. For example, defense counsel appears to have tied the lack of scientific evidence in this case to the prosecution's failure to meet its burden:

> In order to overcome their obligation of proving this case beyond a reasonable doubt they have to overcome, and they haven't overcome the hesitation caused by their presumption of guilt and the sloppy investigation and the sloppy report and the sloppy maintenance of the items that were taken, and in the absolutely sloppy if not totally unscientific and incredible lack of testimony in this case.

And going further, defense counsel raised the specter that the prosecution did not call the crime-laboratory chemist because she may have had information that exonerated the defendant: "[W]e don't know why she wasn't here ... we don't know whether she ran a final test. And we don't know if she ran that final test that she's not here because she didn't want to share the answer."

Using defense counsel's questions and comments as a backdrop, we turn to explore whether the prosecution actually shifted the burden of proof in this case, which the defendant claims was accomplished by three prosecutorial actions. First, on cross-examination of the defense's chemist, the prosecutor asked the following questions:

> Prosecutor: Could you have performed analysis on the suspected cocaine in this case—
>
> Expert: Yes, sir.
>
> Prosecutor:—if provided to you?
>
> Expert: Yes.
>
> Prosecutor: Would that have been difficult for you to do?
>
> Expert: Not terribly. It's not cheap, but it's—
>
> Prosecutor: But it's something that can be done?
>
> Expert: It can be done, yes.

Second, later on in the cross-examination, the prosecutor asked the expert, "If you were to test this, you're confident that you could tell us if it was cocaine?" The expert said yes, after which the prosecutor asked, "And if given the opportunity, you would have happily done that?" The expert replied, "Yes, sir." And third, in closing argument, the prosecutor compared the evidence weighing against and in favor of a conviction, specifically referencing what the defense's expert had done:

> You heard from [the undercover officer], you heard the tape of what happened that day. Basically heard the ten or 15 minutes that constituted this crime. The only other evidence you have in this case is from [the defendant's expert] ... who told you about how he reviewed [the officer's and the crime-laboratory's test results]. That's the extent of what he did in this case. Reviewed two documents: The investigator's warrantless arrest affidavit, and the chemist's analysis. All he did. And based on that he said, based on that analysis, it's not proven absolutely that this is cocaine.
>
> He didn't tell you about any analysis he did. He didn't tell you about whether he spoke to any of these people. All he told

you is, I've reviewed these documents and it wasn't absolutely cocaine.

Defense counsel's going to get a chance to talk to you, and I want you to think about the extent of that testimony versus what you heard from [the undercover officer], what you heard on the tape of this crime, and the evidence drawn. Thank you.

Defense counsel objected to all three actions at trial, and twice moved for a mistrial, which the trial court denied.

We conclude that the trial court did not abuse its discretion in denying the defendant's motion for a mistrial because the prosecutor's actions were more likely meant to highlight the strength of the prosecution's case, dispelling negative implications raised by defense counsel, than they were an attempt to shift the burden of proof.

Importantly, the prosecutor never went far beyond what defense counsel had already established: that the defense expert could have conducted conclusive tests. In his first line of questioning, the prosecutor simply reconfirmed that the expert could have performed the tests. Given defense counsel's questions, this clarification properly fell within the scope of cross-examination. *See People v. Harris,* 762 P.2d 651, 660 (Colo.1988); *People v. Sallis,* 857 P.2d 572, 574 (Colo.App. 1993).

The prosecutor's second line of questioning was similar to his first, but more strongly implied that the expert *did not* perform any tests in this case, as opposed to simply having had the capability to perform them. Further, by asking the expert whether he "would have happily" run the tests had he been "given the opportunity," the prosecutor could be seen as suggesting to the jury that the defendant had not given the expert such an opportunity, which may have more strongly implied the defendant had a burden of

proof. Similarly, in closing argument, the prosecutor emphasized that "all [the expert] did" was to render an opinion based on the prosecution's two tests, which suggests that the expert never performed any tests.

Although these questions and comments implied that the defendant had the burden of proof,[6] this implication is weak in light of the primary role the prosecutor's questions and comments were most likely designed to play considering the context of the whole record: to clearly define the limitations of the expert's testimony so that the prosecution could argue that it had satisfied its burden. The prosecutor's questions confined the expert's opinion solely to the tests offered by the prosecution, thereby limiting the persuasive value of that opinion and placing that opinion in the context of all the evidence adduced at trial. The prosecutor most likely questioned the expert and commented on that expert's testimony because he wanted the jury "to think about the extent of that testimony versus what you heard from [the undercover officer], what you heard on the tape of this crime, and the evidence drawn"—not to suggest the defendant had any obligation to offer evidence.

The prosecutor's closing rebuttal supports the notion that the primary reason he discussed the expert's ability to run conclusive tests was not to shift the burden of proof, but to highlight the strength of his case. In his rebuttal, the prosecutor never mentioned the defense's expert witness, never discussed the expert's ability to run conclusive tests, and never took up whether the expert ran any tests in this case. Instead, the prosecutor argued extensively that from the recordings alone, the jury should find the substance was crack cocaine. The prosecutor argued that he had proven the substance was crack cocaine because, according to the prosecutor, the recordings established that the defen-

---

**6.** We are not convinced it is more prejudicial to establish that a defendant *did not* conduct any conclusive tests than it is to establish that the defendant *could* have run such tests. The implication that a defendant bears the burden to prove his innocence by conducting tests hinges on the premise that he can conduct those tests. *See State v. Elkins,* 44 Kan.App.2d 974, 242 P.3d 1223, 1229 (2010) (stating that prosecutor's cross-examination of defense expert that includ-

ed question about his ability to retest DNA results was "completely harmless" and did not shift the burden of proof, in part because the witness stated that it was impossible to perform a retest). The fact that a defense expert does not conduct any tests, by itself, creates only a weak implication the defendant bears any burden of proof, as it is also possible no test was conducted because the defendant was unable to do so.

dant: (1) yelled out "You want dope?" to the undercover officer; (2) told the officer he could get crack cocaine for him; and (3) took the officer to the location where he then proceeded to get the drugs.[7]

Hence, the record shows that the prosecutor's questions and comments were most likely not meant to suggest that the defendant had an obligation to prevent evidence of his innocence, but were probably designed to show that, despite the lack of scientific evidence proving the substance was cocaine, the evidence put forth by the prosecution was sufficient to prove the defendant's guilt beyond a reasonable doubt. In addition, considering the context of the whole trial, the prosecutor's questions and comments likely served to dispel the negative implications raised by defense counsel's questions that the prosecution had failed to meet its burden because of sloppy testing or fear of what conclusive testing might reveal. By focusing on the limitations of the expert's testimony, it appears the prosecutor was able to explain why the prosecution had not had any conclusive tests performed: the case against the defendant was strong enough.

And finally, the instructions given to the jury by counsel and the court fully neutralized any remaining strength that the prosecutor's actions had in implying the defendant bore the burden of proof. Before closing arguments, the trial court instructed the jury on the defendant's presumption of innocence and stated that "[t]he burden of proof is upon the prosecution to prove to the satisfaction of the jury beyond a reasonable doubt the existence of all of the elements necessary to constitute the crime charged." In his closing argument, defense counsel explained and emphasized more than once that the burden of proof is "always, always" with the prosecution. In his closing argument, the prosecutor acknowledged that closing arguments are only argument, and that the jurors should "consider what you actually heard from that stand." And in the course of closing argu-

ment, the trial court told the jury that "it's just argument, ladies and gentlemen, what the lawyers say. It's not evidence."

In light of the entire record, the prosecutor's actions only weakly imply the defendant had the burden of proof, as they were more likely intended to highlight the strength of the prosecution's case and dispel negative implications raised by defense counsel's questioning of its expert. Hence, the prosecutor's actions did not shift the burden of proof in this case, especially considering the burden-of-proof instructions given to the jury. Therefore, we cannot say that the trial court abused its discretion in denying the defendant's motion for a mistrial. Because we conclude there was no error, we do not address the question of whether a denial for a motion for mistrial should be reviewed for an abuse of discretion where constitutional error is involved.

## IV. Conclusion

For the foregoing reasons, we reverse the judgment of the court of appeals.

---

7. Although the prosecutor generally argued that from evidence of the transaction alone the jury knew the substance was crack cocaine, the prosecutor did not mention that from the electronic recordings of the transaction the jury may also have gleaned that the defendant: (1) insisted the substance was crack cocaine; (2) appeared to acknowledge that a drug dealer "takes care" of him; and (3) invited the undercover officer to stop by and see him in the future, implying that he could again get cocaine for the officer.