People v Pardee (2024 NY Slip Op 03360)

People v Pardee

2024 NY Slip Op 03360

Decided on June 20, 2024

Appellate Division, Third Department

Clark, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 20, 2024

535286

[*1]The People of the State of New York, Respondent,
v
Michael R. Pardee, Appellant.

Calendar Date:April 22, 2024

Before: Garry, P.J., Clark, Ceresia, Fisher and Powers, JJ.

Tina K. Sodhi, Alternate Public Defender, Albany (Steven M. Sharp of counsel), for appellant.
P. David Soares, District Attorney, Albany (Erin N. LaValley of counsel), for respondent.

Clark, J.
Appeal from an order of the County Court of Albany County (Andra Ackerman, J.), entered January 12, 2022, which classified defendant as a risk level three sex offender pursuant to the Sex Offender Registration Act.
In 2021, the Board of Examiners of Sex Offenders was notified that defendant had established residency in New York and was required to register as a sex offender as a result of a 1993 out-of-state conviction of first-degree child molestation in violation of 9A.44.083 of the Revised Code of Washington. The Board prepared a risk assessment instrument (hereinafter RAI) pursuant to the Sex Offender Registration Act (see Correction Law art 6-C [hereinafter SORA]) and assigned defendant 110 points, presumptively classifying him as a risk level three sex offender. At the ensuing hearing, defendant challenged, as is relevant to this appeal, the assessment of five points under risk factor 9 for any criminal history not involving a sex crime or felony, which, if deducted, would place him at a presumptive risk level two sex offender. County Court rejected defendant's challenges and found that the People established, by clear and convincing evidence, facts supporting the assessment of 110 points, classified defendant as a risk level three sex offender and, among other things, denied his request for a downward departure. Defendant appeals.[FN1]
Defendant's primary contention on appeal is that County Court erred in assessing five points under risk factor 9 based upon out-of-state convictions. "[T]he ultimate and paramount concern of the SORA risk-level assessment is an accurate determination of the risk a sex offender poses to the public" (People v Perez, 35 NY3d 85, 94 [2020] [internal quotation marks and citation omitted]; accord People v Weber, 40 NY3d 206, 216 [2023]). As information pertaining to a defendant's prior criminal history is a reliable indicator of wrongdoing that is relevant in assessing a defendant's likelihood of reoffense and danger to the public, five points are assessed under risk factor 9 for "any criminal history other than a felony or sex crime" (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 13 [2006]; see Correction Law § 168-l [5] [a]; People v Wassilie, 201 AD3d 1117, 1119 [3d Dept 2022], lv dismissed 37 NY3d 1172 [2022], lv denied 38 NY3d 907 [2022]). Although not specifically raised by the parties, we must first clarify the test that courts should utilize to determine whether it is appropriate to assess five points under risk factor 9 based on a conviction in any jurisdiction other than New York.
Faced with the question of whether a foreign conviction fell within the scope of the New York offense of endangering the welfare of a child, which would support the corresponding assessment of 30 points under risk factor 9, the Court of Appeals applied the essential elements test (see People v Perez, 35 NY3d at 95). Pursuant to the essential elements test, a court must "compare the elements of the foreign [*2]offense with the analogous New York offense to identify points of overlap" and, "where the offenses overlap but the foreign offense also criminalizes conduct not covered under the New York offense, the [court] must review the conduct underlying the foreign conviction to determine if that conduct is, in fact, within the scope of the New York offense" (Matter of North v Board of Examiners of Sex Offenders of State of N.Y., 8 NY3d 745, 753 [2007]; see People v Perez, 35 NY3d at 93). Notably, the Court declined to opine on the applicability of the essential elements test outside those specific circumstances (see People v Perez, 35 NY3d at 98 n 11). This Court and the other Departments previously have deemed it appropriate to utilize the essential elements test to determine whether a foreign conviction falls within the scope of a New York offense to assess points under any category of risk factor 9 (see e.g. People v Hicks, 203 AD3d 1679, 1679-1680 [4th Dept 2022], lv denied 38 NY3d 910 [2022]; People v Smith, 199 AD3d 1188, 1191-1192 [3d Dept 2021]; People v Cremeans, 194 AD3d 1369, 1370-1371 [4th Dept 2021], lv denied 37 NY3d 910 [2021]; People v Bean, 190 AD3d 622, 622-623 [1st Dept 2021], lv denied 36 NY3d 913 [2021]; People v Smith, 175 AD3d 572, 573 [2d Dept 2019]). Such application ensures that courts properly assess "prior crimes" and accurately determine a sex offender's risk level in accordance with acts that the Legislature has deemed apt to criminalize (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 6 [2006]). Consequently, to the extent that we have not expressly held that the essential elements test should be utilized to determine whether a foreign conviction supports the assessment of any points under risk factor 9, we hold so now.
As relevant on appeal, the People submitted evidence in the form of the presentence investigation report and case summary indicating that defendant was convicted of driving while intoxicated in the State of Texas in 1987, and County Court assessed five points for risk factor 9 based on such conviction. Although County Court did so without determining whether that offense met the essential elements test, the record suffices to allow us to conduct said inquiry (see e.g. People v Smith, 199 AD3d at 1191). Pursuant to the Texas statute underlying defendant's 1987 conviction, a person commits the offense of driving while intoxicated, a misdemeanor, " 'if the person is intoxicated while driving or operating a motor vehicle in a public place' " (Wilson v State of Texas, 772 SW2d 118, 121 [Ct Crim App Tex 1989], quoting former Texas Civil Statutes art 6701l-1 [b]).[FN2] In New York, a person who operates a motor vehicle "upon public highways, private roads open to motor vehicle traffic and any other parking lot" (Vehicle and Traffic Law § 1192 [7]) commits the misdemeanor offense of driving while intoxicated, as relevant here, if he or she does so "while in an intoxicated condition" (Vehicle [*3]and Traffic Law § 1192 [3]) or while having a blood alcohol content (hereinafter BAC) of .08% or higher (see Vehicle and Traffic Law § 1192 [2]). As defendant specifically highlights, inasmuch as the text of the relevant Texas statute criminalizes conduct in a public place while the text of the New York statute specifies public roads, certain private roads and parking lots, the Texas offense appears to "criminalize[ ] conduct not covered under the New York offense" (Matter of North v Board of Examiners of Sex Offenders of State of N.Y., 8 NY3d at 753; compare former Texas Civil Statutes art 6701l-1 [b], with Vehicle and Traffic Law § 1192 [2], [3], [7]).
Turning to the second step of the essential elements test, we agree with defendant that, based on this record, the People failed to establish that the conduct underlying the Texas conviction falls within the scope of a New York offense. According to the presentence investigation report, a law enforcement officer responded to a park in the City of Houston, Texas and encountered defendant, who had been driving a motor vehicle in circles on a grassy area in the park. Upon making contact, defendant was unable to stand on his own and smelled strongly of alcohol; a subsequent breathalyzer test revealed that defendant had a BAC of .19%. Although defendant's BAC establishes defendant's intoxication (see Vehicle and Traffic Law § 1192 [2]), the record is devoid of any evidence regarding the location of the grassy area in relation to any "public highways, private roads open to motor vehicle traffic and any other parking lot" (Vehicle and Traffic Law § 1192 [7]). Under these circumstances, it would be inappropriate to apply the inference that defendant necessarily operated a vehicle upon any prohibited location and, as such, the People failed to establish that the conduct underlying the Texas conviction falls within the scope of the New York offense of driving while intoxicated (compare People v Fenger, 68 AD3d 1441, 1443 [3d Dept 2009]; People v Beyer, 21 AD3d 592, 594 [3d Dept 2005], lv denied 6 NY3d 752 [2005]). Consequently, County Court erred in assessing five points under risk factor 9 based upon the Texas misdemeanor conviction (see People v Hicks, 203 AD3d at 1679-1680; People v Smith, 199 AD3d at 1191-1192).
We also agree with defendant that County Court could not have assessed five points under risk factor 9 based on defendant's 1993 conviction for driving while under the influence of alcohol/drugs in the State of Washington (hereinafter the Washington DWIAD conviction). When determining whether a defendant's criminal convictions may support the assessment of points under risk factor 9, courts should carefully review the timeline of convictions and the underlying conduct in relation to the registrable offense. Here, although the Washington DWIAD conviction occurred prior to the child molestation conviction that gave rise to the instant SORA hearing, the presentence investigation report is clear that [*4]the commission of the child molestation offense predated the Washington DWIAD conviction and, as such, that conviction could not serve as the basis for assessing points under risk factor 9, as it did not constitute prior criminal history (see People v Gomez, 204 AD3d 843, 845 [2d Dept 2022]; People v Green, 192 AD3d 927, 927 [2d Dept 2021], lv denied 37 NY3d 910 [2021]; see also People v Williams, 201 AD3d 476, 476 [1st Dept 2022]; People v Neuer, 86 AD3d 926, 926-927 [4th Dept 2011], lv denied 17 NY3d 716 [2011]). Accordingly, we must deduct five points from the total score of 110, resulting in a score of 105; based upon such score alone, defendant would be classified as a presumptive risk level two sex offender (see Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 3 [2006]).
Nevertheless, as defendant had a clinical diagnosis of pedophilic disorder, he was properly classified as a presumptive risk level three sex offender.[FN3] Where "[t]here has been a clinical assessment that the offender has a psychological, physical, or organic abnormality that decreases his [or her] ability to control impulsive sexual behavior," an automatic override is permitted (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, override 4 [2006]). Here, the People established by clear and convincing evidence that defendant had been diagnosed with pedophilic disorder — a diagnosis which defendant did not dispute. As an override based upon such clinical diagnosis is appropriate, defendant was properly classified as a presumptive risk level three sex offender (see People v Grief, 223 AD3d 917, 919 [2d Dept 2024]; People v Strong, 196 AD3d 707, 708-709 [2d Dept 2021], lv denied 37 NY3d 917 [2022]; People v Stein, 194 AD3d 1201, 1203 [3d Dept 2021], lv denied 37 NY3d 913 [2021]; Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 19 [2006]).
Further, we are unpersuaded by defendant's contention that County Court abused its discretion in denying his request for a downward departure, as he failed to meet his burden of establishing by a preponderance of the evidence the existence of mitigating factors which were of a kind or to a degree not adequately taken into account by the RAI (see People v Gillotti, 23 NY3d 841, 863-864 [2014]; People v Middlemiss, 153 AD3d 1096, 1098 [3d Dept 2017], lv denied 30 NY3d 906 [2017]). The strict supervision and conditions of defendant's release as a basis for a downward departure were taken into consideration in the RAI, as no points were assessed under risk factor 14 regarding supervision (see People v Huether, 205 AD3d 1233, 1235 [3d Dept 2022], lv denied 39 NY3d 901 [2022]; People v Green, 201 AD3d 1137, 1139 [3d Dept 2022], lv denied 38 NY3d 906 [2022]). Further, although advanced age may constitute a mitigating factor warranting a downward departure (see Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 4-5 [2006]), defendant's conclusory assertion [*5]that his age was a mitigating factor did not establish by a preponderance of the evidence how his age minimizes his risk of reoffending (see People v Small, 217 AD3d 1289, 1289-1290 [3d Dept 2023]; People v Holton, 193 AD3d 1212, 1213 [3d Dept 2021]). Lastly, to the extent that defendant claims that his counsel was ineffective, such contention lacks merit.
Garry, P.J., Ceresia, Fisher and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Defendant was also required to register as a sex offender for a 2002 federal conviction of two counts of possession of child pornography in violation of 18 USC § 2252A (a) (5). The Board prepared a separate report and RAI and, following a hearing, County Court reached a separate SORA determination which is the subject of a separate appeal (People v Pardee, ___ AD3d ___ [3d Dept 2024] [decided herewith].

Footnote 2: In 1993, former Texas Civil Statutes art 6701l-1 (repealed by L 1993, ch 900, § 1.15) was replaced with Texas Penal Code § 49.04 (as added by L 1993, ch 900, § 1.01, as amended by L 1995, ch 76, § 14.55, and L 2011, ch 960, § 2). Currently, a person commits the offense of driving while intoxicated in Texas "if the person is intoxicated while operating a motor vehicle in a public place" (Texas Penal Code § 49.04 [a]).

Footnote 3: The People sought "an override under the basis of override number four" premised on defendant's diagnosis of pedophilic disorder. County Court found that the diagnosis was established but, having deemed the People's verbiage a "clerical error," treated their request for an override as a request for an upward departure and granted it as an alternative basis to classify defendant as a risk level three sex offender. Despite this confusion, remittal is not required, as the record is sufficiently developed to allow us to make our own factual findings and legal conclusions (see People v Coe, 167 AD3d 1175, 1176 [3d Dept 2018]).